ALBERT WILLIAMS *et al.*, Petitioners-Appellants, *v.* JAMES IRVING *et al.*, Respondents-Appellees.

Third District    Nos. 80-490, 80-452, 80-465, 80-488, 80-489 cons.

Opinion filed July 23, 1981.

Robert Agostinelli and Charles W. Hoffman, both of State Appellate Defender's Office, of Ottawa, for appellants.

Tyrone C. Fahner, Attorney General, of Chicago (Edward M. Kay, Assistant Attorney General, of counsel), for appellees.

Mr. JUSTICE ALLOY delivered the opinion of the court:

These consolidated cases all raise the issue of whether the Department of Corrections (Department), in implementing the mandate of *Johnson v. Franzen* (1979), 77 Ill. 2d 513, 397 N.E.2d 825, must grant to prisoners sentenced prior to February 1, 1978, the full amount of statutory good time applicable to their sentences under the old sentencing law,

regardless of the actual time served by them prior to February 1, 1978. The prisoners all filed petitions for writs of *mandamus*, alleging that the Department was wrongfully denying them the benefit of day-for-day good time, to which they were entitled under *Johnson v. Franzen*, through its failure to credit the prisoners with the full amount of statutory good time applicable under the old sentencing law. The *Johnson v. Franzen* decision held that prisoners serving indeterminate sentences imposed under the old sentencing law were entitled to day-for-day good-time credit for the time they served *after* February 1, 1978. 77 Ill. 2d 513, 522.

In response to the petitions, the Department filed motions to dismiss in all cases, arguing that recalculation of the sentences, including day-for-day good-time credit (for all time served) under the mandate of *Johnson v. Franzen* and the Department's implementation policy, would result under such interpretation, for these prisoners, in longer sentences than if they remained under the old sentencing system. Since application of the day-for-day credits in these cases did not benefit the prisoners, but worked to their detriment, the Department argued that *Johnson v. Franzen* did not apply. The Department emphasized that the prisoners were actually receiving treatment, under the system that provided for their shortest period of incarceration. The circuit court agreed with the Department's implementation policy, and it dismissed the petitions. This appeal followed.

The prisoners argue on this appeal that the Department's method of calculating their statutory good time, earned prior to February 1, 1978, was incorrect and contrary to the decision in *Johnson v. Franzen*. Further, they argue that a corrected methodology for computing pre-February 1, 1978, statutory good-time credit would result in a benefit to these prisoners, in the form of reduced sentences that would then benefit from application of post-February 1, 1978, day-for-day good-time credit under the new sentencing law.

The Illinois Supreme Court in the *Johnson v. Franzen* case discussed the relevant background and statutory provisions. Only a brief quotation from the opinion will be set forth herein:

> "Until February 1, 1978, Illinois had a system of indeterminate sentences in which those committed to the Department of Corrections for commission of a felony were sentenced to minimum and maximum terms of imprisonment (Ill. Rev. Stat. 1977, ch. 38, par. 1005—8—1). Good-conduct credits were applied to the minimum term to advance the date of parole eligibility and to the maximum to advance the date beyond which a prisoner could not be incarcerated. The Department was required to prescribe, at a rate within its discretion, a schedule of good-conduct credits for good

behavior (Ill. Rev. Stat. 1977, ch. 38, par. 1003—6—3). These were known as 'statutory good time credits.' The Department was also empowered to award good-conduct credits to prisoners who performed work assignments or participated in other Department programs (Ill. Rev. Stat. 1977, ch. 38, par. 1003—12—5). These credits were known as 'compensatory good time credits.'

Effective February 1, 1978, the General Assembly amended the Unified Code of Corrections (Code) and replaced in some instances the indeterminate sentencing system with a fixed or determinate sentencing system (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—1). The Code no longer gives the Department authority to award compensatory good-conduct credits (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1003—12—5) and no longer gives the Department the authority to award statutory good-time credit at a discretionary rate (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1003—6—3). The Code expressly directs the Department to prescribe rules and regulations providing for good-conduct credits on a day-for-day basis." (77 Ill. 2d 513, 516.)

In the *Johnson v. Franzen* case the Department took the position that day-for-day good-time credits, as begun under the new sentencing law on February 1, 1978, did not apply to those prisoners sentenced to an indeterminate term under the old sentencing system. The Department continued treating them solely under the old sentencing law with respect to good-time credits. In *Johnson v. Franzen*, the Illinois Supreme Court rejected the Department's position and policy, and it held that the legislature intended that prisoners sentenced prior to February 1, 1978, under the old indeterminate system, were also, thereafter, to receive the benefit of the day-for-day good-time credit system which was instituted by the new sentencing law on February 1, 1978. The court concluded:

"From February 1, 1978, forward, plaintiff is entitled to one day of good-conduct credit for each day served to the extent his prison conduct merits the award of credits. The credits are to be applied to the minimum and maximum terms. For time served prior to February 1, 1978, plaintiff is entitled to the statutory and compensatory good-time credits to which he was entitled under the old good-conduct-credit system." (77 Ill. 2d 513, 522.)

It is the latter statement by the court, regarding entitlement to statutory good-time credit under the old system, that forms the crux of the dispute in the instant case.

Following the decision in *Johnson v. Franzen*, the Department, by administrative direction, set forth a procedure for applying day-for-day good-conduct credit to indeterminate sentences imposed prior to February 1, 1978. Under that procedure, the Department first determined how

much actual time a prisoner had served prior to February 1, 1978. Next, it was determined how much statutory good-time credit had been earned by the prisoner, based upon his amount of time served prior to February 1, 1978. The prisoner was then given credit for this *pro rata* share of statutory good time, and he was also credited with any compensatory good time he had earned prior to February 1, 1978. These figures, total compensatory good time and total earned statutory good time, were added together to arrive at a total time credit figure. This total, pre-February 1, 1978, time credit figure was then subtracted from the prisoners' court imposed minimums and maximums to determine how much time remained to be served on the sentences. It was from the latter figures, the adjusted minimums and maximums, that the Department would then apply day-for-day good-time credits earned after February 1, 1978.

As applied to certain prisoners, including the petitioners herein, however, the Department's procedure resulted in longer, rather than shorter, periods of incarceration. As to them, their periods of confinement would be shorter if they remained under the former system of statutory and compensatory good time. For these prisoners, who received no benefit, but a detriment, from day-for-day good-time credits, the Department continued to apply the old system and disregarded the new day-for-day good-time statute. It is these prisoners who filed the *mandamus* actions seeking to require the Department to credit them with the new day-for-day good-time credits.

They argue that the day-for-day good-time credits would be beneficial to them, if their sentences were properly adjusted for the good-time credits applicable under the old sentencing system. They argue that the Department's administrative directive, setting forth procedures for calculating the amount of statutory good time to which they were entitled under the old system was incorrect and contrary to the directive of *Johnson v. Franzen*. The essence of the argument is that the Department erred in only crediting them with a *pro rata* share of their statutory good time, based upon the actual time served prior to February 1, 1978. Rather, they argue, they were entitled to the full amount of statutory good time applicable to their full sentences, regardless of the length of time that they had actually served on those sentences. In support of the argument, they assert that it was Department policy, prior to February 1, 1978, to award the full amount of statutory good time to a prisoner at the beginning of his term. Therefore, they argue, *Johnson v. Franzen's* directive that they are entitled to the credits to which they were entitled under the old system means they are entitled to the full amount of statutory good time.

The Department defends its procedure, arguing that statutory good-time credit has always been awarded only on the basis of time actually

served, thereby legitimizing their procedure of awarding only a *pro rata* share, based upon actual time served prior to February 1, 1978, in their calculations for converting old sentences to new ones for application of the new day-for-day good-time credits. The Department further asserts that the prisoners' reasoning would result in their receiving the full amount of statutory good time, under the old act, plus the full amount of day-for-day good time, under the new act. The Department argues that such a double credit was not the intention of the legislature or the supreme court.

Resolution of the issue depends largely upon the nature of the Department's policy with respect to statutory good time, as it existed prior to February 1, 1978. If the Department's policy was to award the full amount of statutory good time upon initial incarceration, then the prisoners are entitled to the full amount. If, on the other hand, statutory good time was earned by a prisoner through serving his sentence with good behavior, then the prisoners are only entitled to the good time they had earned prior to February 1, 1978.

The policy of the Department prior to February 1, 1978, was implemented in Administrative Regulation 813. In pertinent part that Regulation states:

"EXPLANATION:

A. Statutory Good Time

1. Residents appear before the Prisoner Review Board *after having served* their minimum sentence, less Statutory and Compensatory Good Time. In the event a resident must serve the maximum sentence, he/she will be discharged from institution or facility custody after serving the maximum of the sentence, less Statutory and Compensatory Good Time.

2. Statutory Good Time, with reference to both the minimum and the maximum sentence, shall be computed in accordance with the following table for individuals sentenced prior to June 1, 1977: * * *." (Emphasis added.)

There follows two columns, one listing the sentences, from 1 to 25 years, and the other listing "Time To Be Served" under each sentence year. Incorporated into the figures in the latter column are amounts for annual good-time credit. As to sentences longer than 25 years, IIA(2)(a) states:

"a. On the maximum sentence, six months of good time *is earned for* each additional year." (Emphasis added.)

Subpart 3 of IIA contains a statutory good time schedule in the same format as above, but applicable to other prisoners, those sentenced after June 1, 1977. The distinction is not applicable in the instant case. Finally, subpart IIB of the Regulation, which sets forth procedures for the forfeiture of statutory good time, concludes with the following sentence:

"Said forfeiture may be made applicable to the minimum of the sentence to the maximum of the sentence, or to both, and may deprive such individual of any portion or all of the good time that *such person may have earned or may earn in the future.*" (Emphasis added.)

■■ It is evident from the language and structure of this administrative regulation, as well as from the inherent nature of statutory good-time credits, that the Department's policy was to award statutory good-time credit based upon a prisoner's good behavior during the time he served. Stated more simply, statutory good-time credits were earned by prisoners when they served time without infractions of the rules and regulations of the Department. As an example, a person sentenced to 25 years did not earn 6 years and 3 months good-time credit by being sentenced or by beginning his incarceration. He would earn that amount by serving his sentence on good behavior. As the supreme court indicated in *Johnson v. Franzen*, statutory good-time credit was given for good behavior. 77 Ill. 2d 513, 516.

■■ The obvious purpose of awarding statutory good time is to encourage good behavior by rewarding prisoners whey they serve time with good behavior. An award of good time is inherently tied to the serving of time by the prisoner on good behavior. Since statutory good-time credit was credit that was earned by prisoners through serving time on good behavior, the Department was correct, when recalculating sentences for purposes of making the new day-for-day awards, in only crediting prisoners with a *pro rata* share of the full good time they would have received, had they completed their sentences. The *pro rata* share was based upon the time they had served prior to February 1, 1978, and it is all they were entitled to under the old system.

In urging a contrary result, the prisoners point to bookkeeping entries on prisoner records. They argue that the records indicate the Department policy to credit each prisoner with his full statutory good time at the outset of his term. Upon entry into the Department, a record entry was begun on an inmate's records, which would list the prisoner's parole eligibility date and his discharge date. On the records, the Department listed those dates, as determined by the sentence adjusted to take into account an award of full statutory time. In effect, the Department shows on the records the full statutory good time that will have been earned by the prisoner if he serves his time on good behavior. The prisoner's argument is that the bookkeeping entries indicate department policy to award full statutory good time at the outset of their terms. It is then argued that they have thus earned the good time at the beginning of their incarceration, that it is a vested right, and that they must be given full credit for it, regardless of actual time served, when the Department

recalculates their sentences for the purpose of applying the new day-for-day good-time credits. As indicated above, we disagree.

■■ The policy, as set forth in Regulation 813, and as discussed above, is that prisoners earned statutory good time by serving their time on good behavior. Under the policy, statutory good time was a credit that was earned (not a grant or a gift, at the outset, which is lost by improper behavior). That the Department, in its bookkeeping entries, lists parole eligibility dates and discharge dates based upon sentences minus full statutory good time does not indicate or establish the Department's policy to actually award good time at the outset of a prisoner's term. The actual policy is evident in Regulation 813, as discussed. It may be that the Department makes the record entries to encourage good behavior, in effect showing the prisoner that he can be eligible for parole in a certain number of years and months, provided that he earns his statutory good-time credit by serving with good behavior. Regardless of its purposes, though, the bookkeeping entries do not establish the Department's policy.

■■ To the extent that a prisoner has served time on good behavior, he is entitled to a credit for statutory good time applicable to the time he has served. He has a protected interest in that earned good time, which cannot be taken away without significant due process protections. (*Wolff v. McDonnell* (1974), 418 U.S. 539, 41 L. Ed. 2d 935, 94 S. Ct. 2963.) However, we do not conclude that these prisoners have a vested due process interest in the full amount of statutory good-time credit on the day they enter prison, since at that time they have not *earned* any credit.

There was no error in the procedure established by the Department to implement *Johnson v. Franzen*, and there was no error in the denial by the circuit court of the prisoners' writs for *mandamus*. No purpose would be served by a remandment for the purpose of new evidence on the Department's policy prior to February 1, 1978, since that policy is clearly and conclusively shown and comports with the inherent nature of good-time awards.

The decisions of the Circuit Court of Will County in these cases are, therefore, affirmed.

Affirmed.

SCOTT, P. J., and HEIPLE, J., concur.