Ellis PARTEE, Plaintiff,

v.

Michael LANE, et al., Defendants.

No. 81 C 3012.

United States District Court,
N. D. Illinois, E. D.

Dec. 8, 1981.

Ellis Partee, pro se.

Tyrone C. Fahner, Atty. Gen., Thomas A. Ioppolo, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

WILL, District Judge.

Plaintiff Ellis Partee, a prisoner at the Stateville Correctional Center in Joliet, Illinois, brings this action pursuant to 42 U.S.C. § 1983. Named as defendants are: Michael Lane, Director of the Illinois Department of Corrections; John Groves, Chief Record Officer for the Department of Corrections; Michael Krolikiewicz, Record

Office Supervisor at Stateville; Richard DeRobertis, Warden of Stateville; William Kauffman, Executive Director of the Prisoner Review Board; James Irving, Chairman of the Prisoner Review Board; James Thompson, Governor of Illinois; Robert Cattaneo, a certified medical technician at Stateville; Mick Ward,[1] Hospital Administrator at Stateville; and Marie Hall, Medical Services Administrator for the Department of Corrections.

In the first of Partee's three allegations, he complains that the defendants Groves and Krolikiewicz failed to correct promptly his prison records as to the amount of good time that he has earned, despite a decree of the Circuit Court of Will County ordering them to do so. He also alleges that the defendants' recalculation of his good time credits is incorrect in that they have not accorded him all of the good time to which he is entitled. He seeks an order compelling the Department of Corrections to recalculate further his good time credits. He also seeks damages for the depression and anxiety which he alleges the defendants' failure to recalculate promptly and fully his good time credits caused him. Partee has named DeRobertis, Lane, Irving, Kauffman, and Thompson as additional defendants to this complaint based upon their failure to answer his letters to them in which he explained his dissatisfaction with Groves and Krolikiewicz's recalculation of his good time credits.

Partee's second allegation is that the defendant Cattaneo denied him access to medical treatment for depression and for an injury to his nose. He also complains that Cattaneo and Ward unlawfully revoked a

prison doctor's order that Partee either have his own cell or a compatible cellmate. Partee also alleges that the defendants Hall, DeRobertis, and Lane failed to respond to his letters to them in which he complained of the alleged denial of medical treatment and the refusal to give him a single cell or a different cellmate.

Finally, Partee claims that the Prisoner Review Board was arbitrary and capricious in denying him parole because they gave only "boilerplate reasons" for their decision. He also claims that the Board denied him parole in retaliation for other litigation that he had initiated against the defendant Irving.

The defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. They have attached various affidavits and documents to their motion, and, where it is necessary for us to consider these materials, we will treat their motion as one for summary judgment. For the reasons hereinafter stated, we grant their motion.

### I.

On April 10, 1974, Partee received an eight to fifteen year sentence for armed robbery. From August 26, 1973, until the date of his conviction—a total of 288 days—he was confined in the Will County Jail. In 1980, Partee filed a petition for a writ of mandamus in the Circuit Court of Will County, seeking credit for time served in the county jail. He also sought recalculation of his statutory and compensatory good time credits pursuant to statutory changes regarding the calculation of good time.[2]

---

1. Partee names Ward as a defendant and describes him as the Hospital Administrator at Stateville. The motion and supporting memoranda submitted by the Illinois Attorney General's Office do not list Ward as one of the defendants on whose behalf those papers were filed, and do not discuss Ward's conduct, if any, vis-à-vis Partee.

2. Ill.Rev.Stat. ch. 38, § 1003–6–3 (1979) provides that prisoners earn good time credits, in return for good behavior during their confinement, on a "day-for-day" basis, *i.e.*, six months for every year served. This method has been in

effect since February 1, 1978. Prior to that date good time was computed as a combination of statutory good time (in return for good behavior) and compensatory good time (for performance of work assignments or participation in other programs). *See* note 3 *infra*. This "old system" of statutory and compensatory good time is still available to prisoners who received indeterminate sentences prior to February 1, 1978. *See Williams v. Irving*, 98 Ill. App.3d 323, 53 Ill.Dec. 746, 424 N.E.2d 381 (1981). It is questionable whether it is to Partee's advantage to have his good time credits computed under the day-for-day method of the

On the basis of two decisions of the Illinois courts, *Johnson v. Franzen*, 77 Ill.2d 513, 34 Ill.Dec. 153, 397 N.E.2d 825 (1979), and *Hampton v. Rowe*, 88 Ill.App.3d 352, 43 Ill.Dec. 511, 410 N.E.2d 511 (1980), holding that the new good time statute is, in part, applicable to prisoners who began serving their sentences before the effective date of the new statute,[3] Judge Haase of the Circuit Court of Will County ordered the Department of Corrections to recalculate Partee's good time credits, but stayed his order pending the Department's appeal of his decision and its appeal of *Hampton* to the Illinois Supreme Court.

On April 3, 1981, Judge Haase removed his stay of this order. On April 5, Partee filed a separate habeas corpus action in the Circuit Court of Will County, seeking the same relief sought in the earlier mandamus action. Later, on May 29, Partee filed this section 1983 complaint in federal court, seeking further recalculation of his good time credits, damages for the depression and anxiety which allegedly resulted from the delay and inaccuracy in the recalculation, and raising other claims. At some time during this period, the Department recalculated Partee's good time credits, and advised Judge Haase of its method of calculation. Apparently satisfied that the Department's recalculation of Partee's good time credits complied with his mandamus order, Judge Haase dismissed Partee's state habeas corpus petition on June 18, 1981. Partee's appeal of that dismissal is pending before the Illinois Appellate Court.

■ Partee's section 1983 claim that the defendants failed to recalculate promptly and accurately his good time credits, and that he is therefore entitled to injunctive relief and monetary damages,[4] is dismissed for failure to state a claim upon which relief can be granted. Restoration of good time credits of which a prisoner has been deprived in a disciplinary proceeding cannot be sought through section 1983. *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Although Partee seeks recalculation of good time credits which he

---

current statute. *See Williams*, 53 Ill.Dec. at 749, 424 N.E.2d at 384.

**3.** Specifically, *Johnson* held that a prisoner who began serving an indeterminate sentence prior to February 1, 1978, the effective date of the current provisions of the Illinois good time statute, is entitled to day-for-day credit for time served since February 1, 1978, but is not entitled to the day-for-day method of computation for time served prior to February 1, 1978.

The method of calculating good time prior to February 1, 1978, gave inmates progressively greater amounts of statutory good time during the first six years of their sentences. For example, a prisoner earned one month of statutory good time during the first year of his sentence, two months during his second year, etc., and six months during his sixth year and during every year thereafter. Under the pre-Feb. 1, 1978 system, a prisoner earned, in effect, "day-for-day" statutory good time during that part of his sentence which exceeded five years. *See* A.R. 813, Regulations of the Illinois Department of Corrections. The "old system" of good time calculation provided that prisoners who performed work assignments or who participated in other programs were eligible for compensatory good time credit at a rate of 7 and ½ days per month, *i.e.*, three months per year, in addition to their statutory good time. *See* A.R. 866. The current version of the Illinois good time statute does not allow for compensatory good time. Thus, for some prisoners calculation of good time under the day-for-day method of the current statute is not as advantageous as the old statute's combination of statutory and compensatory good time. *See Williams v. Irving*, 98 Ill.App.3d 323, 53 Ill.Dec. 746, 424 N.E.2d 381 (1981).

In *Hampton v. Rowe*, 88 Ill.App.3d 352, 43 Ill.Dec. 511, 410 N.E.2d 511 (1980), the Illinois Appellate Court held that a prisoner who served approximately thirty months in a county jail prior to his conviction was entitled to compensatory good time for that period where other prisoners, who began serving their sentences only after conviction, were eligible for (and routinely received) compensatory good time as soon as they entered the custody of the Department of Corrections.

**4.** It is unclear from the wording of Partee's complaint whether his claim for damages extends to the alleged deprivation of his good time credits, or was meant to apply only to his claim that certain defendants denied him access to necessary medical care. We believe that the admonition of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), to construe liberally the complaints of *pro se* prisoners requires that we read Partee's complaint as seeking damages as well as injunctive relief for the defendants' alleged failure to recalculate his sentence promptly and correctly.

claims he rightfully possesses, and not the restoration of good time credits taken from him, such a distinction is based on too narrow a reading of *Rodriguez*. Partee's request that we order the defendants to recalculate once again his good time credits is essentially a challenge to the duration of his confinement, and may be raised only through a petition for a writ of habeas corpus once available state remedies have been exhausted. *Preiser v. Rodriguez, supra; Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

A claim which seeks monetary damages for an unlawful deprivation of good time credits may, however, proceed under section 1983 while actual restoration (or recalculation) of good time credits is sought in state proceedings. *McDonnell*, 418 U.S. at 554–55, 94 S.Ct. at 2973–2974. As indicated, Partee's complaint can be read as one which seeks money damages for "the depression and anxiety" suffered as a result of the defendants' alleged failure to recalculate promptly and accurately his good time credits. Nonetheless, the extension of judicial immunity to those officials who act pursuant to a court order precludes Partee's recovery of money damages on this allegation and requires its dismissal. A judge is absolutely immune from liability in damages for actions taken within his judicial capacity. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Public officials who act pursuant to facially valid court orders are accorded the immunity possessed by the judge who entered the order. *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir.), *cert. denied*, 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969); *Holmes v. Silver Cross Hospital*, 340 F.Supp. 125, 131 (N.D. Ill.1972); *see United States ex rel. Bailey v. Askew*, 486 F.2d 134 (5th Cir. 1973). The defendants recalculated Partee's sentence pursuant to an order of a state court judge. Even if we assume that their recalculation was knowingly erroneous, done in a dilatory manner, and the proximate cause of Partee's depression and anxiety, they are entitled to quasi-judicial immunity for their conduct. We therefore dismiss his complaint as to the defendants Groves and Krolikiewicz.

Nor does Partee's allegation—that he is entitled to damages based on the allegedly erroneous and dilatory recalculation of his good time credits—survive as against the defendants DeRobertis, Irving, Lane, Kauffman, and Thompson merely because they did not respond to Partee's letters which informed them of his complaints against Groves and Krolikiewicz. Our dismissal of the underlying action eliminates any basis for liability on their part. Moreover, while Partee's complaint alleges more than a theory of *respondeat superior*, the mere allegation that various state officials have failed to respond to an inmate's letters does not state a claim under section 1983. *See West v. Rowe*, 448 F.Supp. 58, 60 (N.D. Ill.1978).

We therefore dismiss that part of Partee's complaint which is based on the order of the Circuit Court of Will County to the Department of Corrections that Partee's good time credits be recalculated in light of *Johnson v. Franzen, supra*, and *Hampton v. Rowe, supra*. Assuming some basis in fact exists to Partee's complaint, his only remedy is injunctive relief pursuant to a writ of habeas corpus, a remedy which may be sought here only after his state remedies have been exhausted.

## II.

Partee next alleges that the defendant Cattaneo, a certified medical technician at Stateville, denied him access to medical treatment for two separate conditions. Specifically, Partee claims that he informed Cattaneo of his depression and anxiety, and that Cattaneo denied him access to the prison's psychologist. Partee also claims that Cattaneo denied him access to follow-up treatment for an injury incurred when Partee dropped a 130-pound weight, or barbell, on his nose. Partee admits that he received an X-ray examination (which indicated no fracture) and a five-day supply of pain pills immediately after he injured himself. He claims, however, that after he ran out of pills, he informed Cattaneo that his nose

remained sore when touched, and that he had headaches, but that Cattaneo refused to schedule him for any kind of re-examination.

Partee also claims that the defendant Ward, the former Hospital Administrator at Stateville, denied him access to his cellhouse's scheduled "sick call." He also charges that Cattaneo and Ward unlawfully revoked an order of a prison doctor that Partee receive either a compatible cellmate or his own cell. Partee also alleges that the defendants Hall, DeRobertis and Lane are responsible for the alleged denial of access to medical care on the theory that they failed to respond to his letters to them informing them of the complaints he raises here.

■ A claim that alleges "deliberate indifference" to a prisoner's serious injury constitutes "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment, and states a cause of action under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976). "Deliberate indifference" to serious medical needs of a prisoner can take the form of denial of necessary medical treatment itself, denial of access to necessary medical treatment, or intentional and unreasonable delay in access to such treatment. *Id.* That a medical need is "serious," for the purpose of a section 1983 action, can be established either by showing that a physician has diagnosed it as mandating treatment or by demonstrating that the condition was so obvious that even a lay person would recognize the necessity of a doctor's attention. *Laaman v. Helgemoe*, 437 F.Supp. 269 (D.N.H.1977).

Even when reading Partee's complaint liberally in accordance with the standard of *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it is very doubtful that his allegation that Cattaneo denied him access to a further examination of his nose states a claim upon which relief can be granted. However, the defendants' submis-

sion of materials outside the pleadings, in regard to this allegation and others that Partee makes, requires us to treat this motion as one for summary judgment.

To prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that he is entitled to prevail as a matter of law. Rule 56, Fed.R.Civ.P.; *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495 (7th Cir. 1972). Furthermore, we must view all the facts, and the reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). As indicated, Partee admits that he received prompt and reasonable treatment of his injured nose; his medical records confirm this admission. Cattaneo states, in his affidavit, that he examined Partee's nose (apparently upon Partee's request for re-examination by a physician), and "there was absolutely no signed [sic] of any injury, swelling or fracture. I did not feel his condition required him to see a doctor."

■ Taken together, Cattaneo's affidavit and Partee's medical records show that Partee's medical need was not serious and that Cattaneo was not deliberately indifferent to his condition. Partee's medical need was not of the gravity contemplated by *Estelle v. Gamble, supra. See Gibson v. McEvers*, 631 F.2d 95, 98 (7th Cir. 1980) (summary judgment for defendant was proper where prisoner claimed denial of medical treatment for a cold). At most, Cattaneo's conduct constituted an error in judgment on his part. Even if his conduct rose to a level of malpractice, it did not constitute "deliberate indifference to a serious medical need." He responded to Partee's complaint, and determined that no observable physical sign existed such that a further or more professional examination was needed.[5] Even if we assume that Partee's medical need was serious, Cattaneo was not "deliberately indifferent" to it. We therefore

---

**5.** Partee states in his complaint that he eventually persuaded another medical technician to give him an appointment to see a physician.

Partee's medical records do not indicate whether his nose was in fact re-examined by a physician.

grant Cattaneo summary judgment as to the claim that he denied Partee access to further treatment of his nose.

■ The standard of *Estelle v. Gamble, supra,* extends to a prisoner's psychological needs as well as to his physical medical needs. *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754 (3d Cir. 1979), *on remand,* 487 F.Supp. 638 (W.D.Pa.1980); *Bowring v. Godwin,* 551 F.2d 44 (4th Cir. 1977). But the test is "one of medical necessity" and not simply what may be desirable. *Bowring,* 551 F.2d at 47.

■ Partee's conclusory statement that he was depressed hardly indicates a "serious medical need" such that Cattaneo's denial of access to psychological care might indicate "deliberate indifference" on his part. No doubt most, if not all, prisoners are depressed some if not all of the time. In an ideal prison, psychological care would be available to all prisoners who seek it. But absent some objective indication that Partee's depression went beyond what is probably the norm for prisoners at Stateville, we cannot conclude that Partee's statements that he was depressed were sufficient to make his condition "so serious that even a lay person would recognize the necessity of a [psychologist's] attention." *See Laaman v. Helgemoe,* 437 F.Supp. at 311. Partee's mere statements that he was depressed did not of themselves require the prison official to whom they were addressed to schedule him for an appointment with a psychologist upon pain of liability under section 1983. We therefore dismiss Partee's claim that Cattaneo's failure to refer him to a psychologist constituted "deliberate indifference" to a "serious medical need."

Partee also complains that Cattaneo and Ward conspired to deprive him of the effect of a prison doctor's order that he receive either his own cell or a compatible cellmate. Partee states that he requested some kind of reassignment because his cellmate was getting on his nerves. He does not claim that he has a right to a single cell, *see Rhodes v. Chapman,* —— U.S. ——, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), but that the cancellation by Cattaneo and Ward of

the doctor's order that his cell assignment be changed violated due process. Partee's medical records, however, make clear that the doctor's "order" was contingent upon the concurrence of the hospital administrator. A notation in Partee's file, dated April 16, [1981], and signed "M.J. Ward," states, "Adm. Note. Hosp. Adm. does not concur w/2/11/81 recommendation of compatable [sic] cell-mate. Assign as usual." Another notation, unsigned and dated 6/23/81, states, "I don't see any medical reason for single cell." An accompanying notation, over an illegible signature, states, "No need for single cell." Partee's records do not support his statement (in his reply memorandum) that another hospital administrator, named Phil Elliott, and Tom Morris, the Superintendent of Partee's unit, concurred with the doctor's order; indeed, no such concurrence by anyone appears in his records.

■ Although Partee's medical records suffer from the occasional disorder and indecipherability common to such records, they make two things clear. First, the "order" that Partee be celled alone or with a compatible cellmate was more of a recommendation than an order, and was expressly contingent upon the approval of the hospital administration. Second, this recommendation did not receive the approval upon which it was contingent. Accordingly, we grant Cattaneo and Ward summary judgment as to Partee's complaint that they denied him due process by not giving him his own cell or a different cellmate.

Furthermore, a reading of Partee's medical records indicates no merit to his claim that Cattaneo and Ward denied his access to the prison's "sick call." Those records show that Partee received medical consultation and treatment on several occasions for his various complaints and ailments. We grant the defendants summary judgment as to this claim as well.

As with his other claims, Partee appends other defendants (here DeRobertis, Lane and Hall) to his complaints about medical treatment on the theory that their failure

to answer his letters demonstrates that they have condoned the action of Cattaneo and Ward. For the reasons stated in part I, above, we dismiss his complaints as to DeRobertis, Lane and Hall.

### III.

We next address Partee's complaint that the Prisoner Review Board (the Board), and the defendants Kauffman and Irving, the Board's Executive Director and Chairman respectively, gave only "boilerplate" reasons for denial of Partee's request for parole, following a parole hearing on January 21, 1981. Partee contends that the Board's giving of mere boilerplate reasons for its decision constitutes a failure to give a sufficient factual basis for denial of parole and thereby violates the due process clause of the Fourteenth Amendment.

■ Parole board officials are entitled to absolute immunity from section 1983 suits by prisoners for actions taken when processing parole applications. *Sellers v. Procunier*, 641 F.2d 1295 (9th Cir. 1981). The role of parole board officials is functionally comparable to that which judges perform in sentencing. *Id.; see Butz v. Economou*, 438 U.S. 478, 513, 98 S.Ct. 2894, 2914, 57 L.Ed.2d 895 (1978). We therefore dismiss Partee's claim as to Irving and Kauffman, and consider it as one for declaratory and injunctive relief against the Board.

The Illinois statutory guidelines for parole determinations are in section 3–3–5(c) of the Unified Code of Corrections.

(c) The [Prisoner Review] Board shall not parole a person eligible for parole if it determines that:

(1) there is a substantial risk that he will not conform to reasonable conditions of parole; or

(2) his release at that time would deprecate the seriousness of his offense or promote disrespect for the law; or

(3) his release would have a substantially adverse effect on institutional discipline.

Ill.Rev.Stat. ch. 38, § 1003–3–5(c). The administrative rules of the Board define the factors to be considered in making each of those findings. For example, a determination that release of the candidate for parole "would deprecate the seriousness of his offense or promote disrespect for the law" must be "based on one or more of the following factors:"

1. The offense is one of murder, attempted murder or killing of an individual, robbery with a weapon, rape, indecent liberties, deviate sexual assault, aggravated kidnapping or kidnapping for ransom, armed violence, treason, aggravated arson, treason or calculated criminal drug conspiracy.

2. The aggravating as well as mitigating circumstances as described in Chapter 38, Sections 1005–5–3.1 and 1005–5–3.2, Illinois Revised Statutes.

To notify a prisoner of a decision to deny parole, the Board sends a form notice listing the three reasons given in the statute and the considerations defined in the regulations and checks the reason and factor or factors which were the bases for the denial of parole. In its order denying Partee parole, the Board checked the boxes next to two of the three statutory reasons and next to one factor for each statutory reason. Thus, the form notice that Partee received indicated that

☒ Your release would depreciate the seriousness of the offense or promote disrespect for the law, based upon one or more of the following factors:

  ☒  The offense for which you were convicted,

  ARMED ROBBERY

  \*  \*  \*

☒ Your release would have a substantially adverse effect on institutional discipline based upon one or more of the following factors as established by the finding of an Administrative Review Board:

  \*  \*  \*

  ☒  Repeated violations of major institutional rules.

  \*  \*  \*

The Board added only the words "ARMED ROBBERY" to the form in explaining its decision.

Partee argues that the Board's use of this checklist, which merely recites the statutory and regulatory language and does not provide a more specific statement of facts supporting the denial, violates the due process clause. He seeks as relief a "written statement by the fact-finders, as to the evidence relied on and reasons" for the denial of parole. *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972) (due process requirements for parole revocation).

Even if Partee has a constitutionally protected interest in his parole determination,[6] due process does not require the Board to elaborate on the reasons for denying parole. *Greenholtz v. Inmates of the Nebraska Penal and Corrections Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The court of appeals in *Greenholtz* had held that " 'each inmate to whom parole is denied must be given a full and fair explanation in writing, of the evidence relied upon and the reasons for denial of parole.' " *Inmates of the Nebraska Penal and Correctional Complex v. Greenholtz*, 576 F.2d 1274, 1284 (8th Cir. 1978) (quoting the district court). In reversing that decision, the Supreme Court stated that to require a parole board to specify the particular evidence in the inmate's file or at his interview on which it rests the denial "would tend to convert the process into an adversary proceeding and to equate the Board's parole-release determination with a guilty determination." 442 U.S. at 15–16, 99 S.Ct. at 2108. The Court reasoned that after "the full panoply of due process" at the trial preceding imprisonment, an adver-

sary hearing is not necessary to deny parole and continue confinement. *Id.* at 14, 99 S.Ct. at 2107. Moreover, emphasizing that "due process 'is flexible and calls for such procedural protections as the particular situation demands,' " *id.* at 12, 99 S.Ct. at 2106, *quoting Morrissey v. Brewer*, 408 U.S. at 481, 92 S.Ct. at 2600, the Supreme Court held that a requirement of a full explanation is inimicable to the parole determination which is necessarily subjective in part and predictive in part," 442 U.S. at 13, 99 S.Ct. at 2107, and not necessarily based on specific facts. *Id.* at 14, 99 S.Ct. at 2107.

Although in this case the Illinois parole procedures are involved and not the Nebraska procedures which were at issue in *Greenholtz*, the Supreme Court's decision in *Greenholtz* that a summary of the evidence relied on to deny parole was not required by due process is controlling here. *Greenholtz* was based on the "very broad discretion" granted the paroling authority in the Nebraska Statute. 442 U.S. at 13, 99 S.Ct. at 2107. Since the Illinois statute also gives great discretion to the Illinois Prisoner Review Board, *see, e.g., Tucker v. Kotsos*, 42 Ill.App.3d 812, 818, 1 Ill.Dec. 516, 522, 356 N.E.2d 798, 804 (1976), the rationale of *Greenholtz* applies to defeat the claim that a narrative statement of the evidence and reasons relied on for the denial are essential to due process.

Partee's reliance upon *Garcia v. United States Board of Parole*, 557 F.2d 100 (7th Cir. 1977), is misplaced for two reasons. *Garcia* had held that the federal parole board's denial of parole meets minimum due process requirements only if the board gives a statement of its reasons which is "sufficient to enable a reviewing body to determine whether parole has been denied for an

6. A constitutionally protected interest in parole determinations does not result from the possibility of parole but depends upon the language of the state parole statute. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 8–12, 99 S.Ct. 2100, 2104–2106, 60 L.Ed.2d 668 (1979). In *Greenholtz*, the Supreme Court accepted the inmates' argument that the necessary expectancy of parole was created by the Nebraska statute's requirement that an inmate "shall" be paroled "un-

less" certain findings were made. 442 U.S. at 11–12, 99 S.Ct. at 2105–2106. The Illinois statute is not structured in that affirmative fashion. No set of facts are defined which mandate a decision favorable to the prisoner. The statute does not say an inmate "shall" be released under any condition but only defines when he shall not be. Because of the almost total discretion given to the Board, a parole determination in Illinois does not necessarily trigger due process protections.

impermissible reason or for no reason at all." 557 F.2d at 105. The *Garcia* court determined that a statement of reasons that was slightly more expansive and specific than the one Partee contests here—though essentially boilerplate—was sufficient to satisfy minimum due process. *See id.* at 103 and 105. Even if we were to determine that the statement given to Partee did not meet the *Garcia* standard, the Supreme Court's contrary decision in *Greenholtz* controls our determination in this case. Even absent *Greenholtz*, however, *Garcia* would still be inapplicable to Partee's claim because *Garcia* involved the procedures before the federal parole board. As such, it was decided not on the basis of the due process clause, which is the only authority applicable to Partee's claim, but on the basis of the federal statute which creates the statutory rights of federal prisoners but does not define the constitutional rights of state prisoners. Moreover, even if the Board's checklist violates the Illinois statute and regulations which require a "concise statement of facts supporting the reason or reasons" for denying parole, Rules Governing Parole (publication of the State of Illinois Prisoner Review Board) at 7, Partee does not state a claim for violation of a federally protected right; violation of a state procedural rule does not result in a federal cause of action under section 1983 where, as here, the state procedure is not mandated by the federal constitution.

■ Partee also alleges that the Board's checking of the box next to "Repeated violations of major institutional rules" as a factor which supports its marking of the other statutory reason—that Partee's release "would have a substantially adverse effect on institutional discipline"—violates his rights to due process because, as Partee alleges, officials at the Department purposely caused false reports to be filed against him and intentionally mislabelled reports of "minor" violations as "major" ones. Even if we assume the truth of these conclusory allegations, the Board's reliance upon the other statutory reason—that his release "would deprecate the seriousness of [his] offense or promote disrespect for the

law"—and supporting factor was sufficient to warrant its denial of parole.

■ Similarly, Partee's contention that the Board's denial to him of parole was arbitrary and capricious "since my so-called 'partners in crime' have both been released on parole" lacks merit. Parole, as is sentencing, is an individual determination. Just as a sentencing judge has discretion to give different sentences to co-defendants based upon differences in their ages, past records, other background information, and roles in the crime in which they were jointly involved, so the Board is entitled to look at several factors, including institutional behavior, which are likely to vary in significance from one prisoner to another in its decisions regarding suitability for parole.

■ Partee also charges that the Board denied him parole "because of the court action he took against Defendant Irving." A decision to deny parole "made in retaliation against or so as to hinder the exercise of federally protected rights" is actionable. *Williams v. Rhodes*, 629 F.2d 1099, 1103 (5th Cir. 1980). However, because a determination that Partee was unconstitutionally denied parole would result in his release, his claim must be brought in a habeas corpus petition, *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), unless he can allege facts establishing the grounds for a claim for monetary damages for the alleged unconstitutional parole denial.

We therefore dismiss Partee's claim that the Board's reliance upon "boilerplate reasons" for its denial of parole violated his right to due process of law.

## IV.

We raise, on our own motion, the question whether we should assess Partee with the costs of filing this action and of service upon the defendants. Because Partee was granted *in forma pauperis* status pursuant to section 1915(a) when he filed his section 1983 complaint, these costs were not previously imposed on him. Section 1915(a) states:

Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, *without prepayment of fees and costs* or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor.

28 U.S.C. § 1915(a). [Emphasis added.]

■ A district court has discretion to assess costs against the losing party in a section 1983 action even when that party is a prisoner proceeding *pro se* who received *in forma pauperis* status pursuant to section 1915(a). *Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981). Section 1915(a) does not waive payment of necessary fees and costs when the action is filed; it only postpones the decision of whether to assess those fees and costs until a final determination of the case. *Marks v. Calendine*, 80 F.R.D. 24 (N.D.W.Va.1978), *aff'd sub nom. Flint v. Haynes, supra.*

■ Our authority to assess a section 1915(a) litigant with the fees and costs which were not assessed upon the filing of his complaint is not limited by the standard for awarding attorneys' fees to prevailing defendants in section 1983 actions. *Flint*, 651 F.2d at 973. That standard permits the defendants in a prisoner's section 1983 action to recover their attorney's fees from the prisoner (even though he proceeded *pro se* and *in forma pauperis*) "only if the District Court finds 'that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1981) (per curiam), *quoting Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). While *Hughes* requires a specific finding of frivolousness "in the sense . . . [of] groundless or without foundation," *id.*, before a *pro se* prisoner may be called upon to pay his defendants' attorneys' fees, an assessment of "fees and costs" previously postponed pursuant to section 1915(a) requires no such finding. *Flint*, 651 F.2d at 973.

Were it necessary, we would find that all but one of Partee's allegations are clearly frivolous. Indeed, a strong argument can be made for assessing Partee with attorneys' fees, as well as section 1915(a) fees and costs, although we decline to impose so harsh a penalty on him. Where the mere recitation of his various allegations does not reveal their lack of merit, materials outside the pleadings lead quickly and inexorably to that conclusion. The one allegation of his that we would exempt from a finding of frivolousness is his complaint that the Prisoner Review Board's notation of mere boilerplate reasons for denying him parole violated his right to due process. Although we determined in Part III, *supra*, that Partee's reliance upon the Seventh Circuit's opinion in *Garcia*, 557 F.2d 100 (1977), was misplaced in light of the Supreme Court's opinion in *Greenholtz*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the effect of *Greenholtz* upon the applicability of *Garcia* to a state parole procedure is not so explicit that a *pro se* litigant should necessarily be punished for failure to see it.

We do not suggest that it is proper to assess a prisoner who proceeds *pro se* and *in forma pauperis* with section 1915(a) fees and costs merely because his allegations are insufficient to survive a motion to dismiss. As the Supreme Court reasoned in *Hughes*, "[f]aithful adherence to the principles of *Haines v. Kerner* dictates that attorney's fees should rarely be awarded against such plaintiffs." 101 S.Ct. at 179. The same reasoning suggests that section 1915(a) fees and costs should not be imposed on unsuccessful *pro se* prisoners following dismissal of their claims as a matter of course. However, a litigant's incentive to "weigh the chance of success against the cost of pursuing his action and [to] assess realistically whether the possible benefits outweigh the predictable costs," *Braden v. Estelle*, 428 F.Supp. 595, 597 (S.D.Tex.1977), ought not be removed entirely upon a grant of *in forma pauperis* status, even when the litigant is a prisoner proceeding *pro se*.

■ Because Partee's allegations herein were meritless and, with one possible excep-

tion, frivolous, we will assess fees and costs pursuant to the appropriate provisions against him.

## CONCLUSION

For the reasons stated above, we grant the defendants' motion to dismiss Partee's section 1983 complaint with costs to be assessed against the plaintiff. An appropriate order will enter.