# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *People v. Patterson*, 2016 IL App (1st) 101573-B

</div>

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONALD PATTERSON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-1573 |
| Filed | June 21, 2016 |
| Rehearing denied | October 27, 2016 |
| Modified opinion filed | November 1, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-1455; the Hon. Ellen Mandeltort, Judge, presiding. |
| Judgment | Convictions affirmed; sentence vacated; cause remanded. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Christopher Kopacz, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Brian K. Hodes, and Miles J. Keleher, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE NEVILLE delivered the judgment of the court, with opinion.<br>Justices Pierce and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1         A jury found Ronald Patterson guilty of aggravated criminal sexual assault, an offense committed when he was 15 years old. The trial court sentenced Patterson, under statutes for the sentencing of adult offenders, to 36 years in prison. Our supreme court has affirmed the conviction and remanded the case to this court for consideration of sentencing issues. We now vacate the sentence and remand the case to juvenile court for further proceedings.

¶ 2                                    BACKGROUND

¶ 3         Police arrested Patterson on December 14, 2008, in his home at a facility run by Streamwood Behavioral Health Systems (SBHS). A grand jury charged Patterson with three counts of aggravated criminal sexual assault. The Juvenile Court Act of 1987 required the transfer of the case to criminal court for the trial of Patterson as an adult. 705 ILCS 405/5-130(1) (West 2008). A jury found Patterson guilty as charged.

¶ 4         The presentence investigation report said that Patterson tested positive for cocaine at birth. A relative of Patterson's mother adopted him at 18 months of age, and he grew up with his adoptive parents until they found they could not protect his siblings from his increasingly violent behavior. He had extensive psychiatric treatment from the time he turned 11. The Department of Children and Family Services took custody of Patterson, at his adoptive parents' request, in 2006, when he was 13. He took Thorazine, Benadryl, Prozac, Trileptal, and Abilify, amongst other medications, to try to control his aggressive behavior and his moods. An IQ test in 2006 resulted in a full-scale score of 72.

¶ 5         School records and records from SBHS showed that Patterson acted somewhat violently on numerous occasions. He threw hot water on a teacher in 2004, tried to bite SBHS staff members when they restrained him in 2006, threatened to stab a staff member in 2006, and stabbed a staff member with a pencil in 2008. The behaviors led to some loss of privileges at SBHS and other discipline. Records also showed that at times SBHS rewarded Patterson for extended periods of good behavior.

¶ 6         The presentence investigator said in his report that Patterson had no prior police contacts. According to a printout from the police department, Patterson had one prior arrest, for throwing hot water on a teacher when he was 11, and the arrest resulted in a station adjustment.

¶ 7         The trial court found several factors in aggravation, and none in mitigation, so the court sentenced Patterson to 12 years in prison on each count, with the sentences to run consecutively, for a total sentence of 36 years. Patterson appealed.

¶ 8         The appellate court reversed the convictions and remanded for retrial. *People v. Patterson*, 2012 IL App (1st) 101573. The supreme court reversed the appellate court's judgment and rejected all of Patterson's arguments for a new trial. *People v. Patterson*, 2014 IL 115102. The supreme court remanded the case to this court for consideration of the sentencing issues Patterson raised in his appeal, which this court found no need to consider on the initial appeal due to the decision to remand for a new trial. *Patterson*, 2014 IL 115102, ¶ 127.

¶ 9         After the supreme court filed its opinion, but before the parties finished briefing the appeal on remand, the general assembly amended the Juvenile Court Act, changing the provision that required the juvenile court to transfer the case to criminal court for the State to prosecute Patterson as an adult. Patterson now asks us to remand the case to the juvenile court for

resentencing, in accord with the amended statute.

¶ 10                                ANALYSIS

¶ 11        In 2008, when Patterson committed the offense, section 5-130 of the Juvenile Court Act provided:

> "The definition of delinquent minor under Section 5-120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with *** aggravated criminal sexual assault ***.
>
>    These charges and all other charges arising out of the same incident shall be prosecuted under the criminal laws of this State." 705 ILCS 405/5-130(1)(a) (West 2008).

¶ 12        Thus, section 5-130 of the Juvenile Court Act required prosecution of Patterson under Illinois's criminal laws. The general assembly adopted Public Act 99-258 in 2015, changing the Juvenile Court Act to make the minimum age for mandatory transfer 16, not 15. The Public Act includes no explicit provision establishing the effective date for the change to section 5-130. Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a) (West 2014)).

¶ 13        Public Act 99-258 also amended section 5-805 of the Juvenile Court Act, concerning the discretionary transfer of jurisdiction from juvenile court to criminal court. As amended, the section provides that if the State files a motion for a transfer to criminal court of a case against a minor at least 13 years old, and the juvenile court finds that the prosecution of the minor under criminal law would best serve the interests of the public, the court may transfer the case to the criminal courts. 705 ILCS 405/5-805(3)(a) (West 2014). The Effective Date of Laws Act established January 1, 2016, as the effective date of Public Act 99-258, because Public Act 99-258 does not expressly state its effective date. Pub. Act 99-258 (eff. Jan. 1, 2016); 5 ILCS 75/1 (West 2014).

¶ 14        Public Act 99-258 includes a provision expressly limiting the retroactive application of the amendment to section 5-805. The Public Act states, "The changes made to this Section [5-805] by this amendatory Act *** apply to a minor who has been taken into custody on or after the effective date of this amendatory Act ***." Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a) (West 2014)). Public Act 99-258 does not include any express statement concerning the retroactive application of the amendment to section 5-130. Our supreme court, in *Caveney v. Bower*, 207 Ill. 2d 82 (2003), found that, by adopting section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)), "the legislature has clearly indicated the 'temporal reach' of *every* amended statute." (Emphasis in original.) *Caveney*, 207 Ill. 2d at 92. "[S]ection 4 represents a clear legislative directive as to the temporal reach of statutory amendments and repeals: those that are procedural in nature may be applied retroactively, while those that are substantive may not." *Caveney*, 207 Ill. 2d at 92.

¶ 15        Because the legislature included no express provision concerning retroactive application of the amendment to section 5-130, under *Caveney*, we must determine whether the amendment makes a substantive or procedural change to the Juvenile Court Act. See *People v. Bethel*, 2012 IL App (5th) 100330, ¶ 15. The State claims that the amendment operates substantively to reduce sentences. But the State has successfully argued, in this case as well as others, that despite their effect on sentences, the parts of the Juvenile Court Act governing the transfer of cases to the criminal courts count as procedural provisions. *Patterson*, 2014 IL 115102,

¶¶ 104-05; *In re M.C.*, 319 Ill. App. 3d 713, 719 (2001); *People v. Pena*, 321 Ill. App. 3d 538, 543-44 (2001). The procedural provisions that operated to increase sentences did not become substantive when an amendment made them work to reduce sentences.

¶ 16    The State argues that the legislature implicitly intended prospective application for the amendment, as the amended statute has an effective date in 2016, well after the legislature passed the amendment in 2015. But the Statute on Statutes controls exactly this situation, where the legislature makes no explicit statement regarding retroactive application of an amendment. See *People v. Glisson*, 202 Ill. 2d 499, 506-07 (2002).

¶ 17    The State claims that the decision in *People v. Brown*, 225 Ill. 2d 188 (2007), requires a finding that the amendment here operates only prospectively. But the statute at issue in *Brown*, unlike section 5-130 here, included an express provision concerning its effective date. Because the legislature expressly delayed implementation of the statute, the *Brown* court found that the legislature intended the statute not to apply retroactively. *Brown*, 225 Ill. 2d at 201. Here, the legislature set no explicit effective date, so the Effective Date of Laws Act set its effective date, and the Statute on Statutes governed its retroactivity. Under the Statute on Statutes, the procedural amendment applies retroactively to all cases pending on direct appeal. *Caveney*, 207 Ill. 2d at 92; *Glisson*, 202 Ill. 2d at 506-07; *People v. Hauschild*, 226 Ill. 2d 63, 77-78 (2007).

¶ 18    Finally, the State cites the Synopsis for House Bill 3718, which became Public Act 99-258, where the Synopsis states that the bill "[p]rovides that the amendatory changes to the transfer of jurisdiction provisions are prospective." I Final Legislative Synopsis and Digest of the 99th Ill. Gen. Assem. (No. 16), at 2351. That part of the synopsis accurately describes the effect of the amendment to section 5-805(7), which makes the amendment to section 5-805 operate prospectively. The synopsis does not alter the absence of any similar provision concerning the amendment to section 5-130, which governs the transfer of Patterson's case to criminal court. Because the case comes before us on direct appeal, the procedural amendment to section 5-130, concerning mandatory transfers to criminal court, governs this case. See *Glisson*, 202 Ill. 2d at 506-07.

¶ 19    The amended provisions for discretionary transfer to criminal court would apply here only if the State took Patterson into custody after January 1, 2016, the effective date of Public Act 99-258. Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a) (West 2014)). The version of section 5-805 in effect in 2008, which governs the prosecution of Patterson, provided:

> "If the State's Attorney files a petition, at any time prior to commencement of the minor's trial, to permit prosecution under the criminal laws and the petition alleges the commission by a minor 15 years of age or older of: (i) a Class X felony other than armed violence *** and, if the juvenile judge assigned to hear and determine motions to transfer a case for prosecution in the criminal court determines that there is probable cause to believe that the allegations in the petition and motion are true, there is a rebuttable presumption that the minor is not a fit and proper subject to be dealt with under the Juvenile Justice Reform Provisions of 1998 *** and that, except as provided in paragraph (b), the case should be transferred to the criminal court." 705 ILCS 405/5-805(2)(a) (West 2008).

¶ 20    The State did not file the motion required by section 5-805(2)(a) prior to trial. However, under the circumstances of this case, because the law in effect at the time of the arrest and trial

did not require the filing of a motion to transfer, instead providing for automatic transfer of the case to criminal court, we find that we should permit the State on remand to exercise its discretion and file the requisite motion if it chooses to request a hearing under the provisions of section 5-805(2)(b). 705 ILCS 405/5-805(2)(b) (West 2008). In effect, we treat the case like *People v. Clark*, 119 Ill. 2d 1 (1987). In *Clark*, the juvenile court transferred a case against a minor to the criminal court, and our supreme court found that the transfer hearing did not accord with the requirements of the Juvenile Court Act. The *Clark* court remanded the case to the juvenile court for a new transfer hearing. *Clark*, 119 Ill. 2d at 16-20.

¶ 21 Now that the amendment makes the automatic transfer provision from 2008 inapplicable to Patterson's case, the Juvenile Court Act requires a hearing before the transfer to the criminal court of a case of Class X felony charges against a 15-year-old minor. 705 ILCS 405/5-805 (West 2008). Patterson had no such hearing. We vacate Patterson's sentence and remand the case to the juvenile court to permit the State to file a motion for transfer of the case to criminal court for sentencing. If the State files such a motion, the juvenile court should hold a transfer hearing in accord with the procedures and standards established in the 2008 version of the Juvenile Court Act of 1987. 705 ILCS 405/5-805(2)(b) (West 2008). Regardless of whether the juvenile court or the criminal court sentences Patterson, the sentencing court should take into account the reasoning of *Roper v. Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. ___, 132 S. Ct. 2455 (2012), concerning punishment of juveniles.

¶ 22                                      Petition for Rehearing

¶ 23 The State filed a petition for rehearing, raising two new arguments for affirming the trial court's judgment. First, the State contends that we lacked jurisdiction to enter the order we entered because we failed to obey the supreme court's mandate. We address the new argument on its merits because it pertains to our jurisdiction. See *In re M.W.*, 232 Ill. 2d 408, 414 (2009).

¶ 24 Generally, when a higher court issues a mandate, the lower court must enter a judgment that complies exactly with the higher court's order. See *People ex rel. Daley v. Schreier*, 92 Ill. 2d 271, 276-77 (1982). However, the general rule does not apply when the legislature amends a statute, in a manner that affects the case, between the date of the mandate and the date of the lower court's reconsideration of the case. *Banco Nacional de Cuba v. Farr*, 383 F.2d 166 (2d Cir. 1967).

¶ 25 In *Banco Nacional*, the United States Court of Appeals for the Second Circuit needed to decide whether the United States Supreme Court's mandate precluded the court of appeals from applying a newly amended statute. The *Banco Nacional* court said:

> "The Supreme Court mandate rule is nothing more than one specific application of a general doctrine appellate courts apply to their orders to lower courts, a doctrine commonly referred to as the law of the case *** . *** [A] lower court is not bound to follow the mandate of an appellate court if the mandate is, in the interim, affected by an authority superior to the court issuing the mandate, such as by a higher appellate court, either state or federal *** . *** The same principle should apply here; any limiting language in the Supreme Court mandate should not preclude judicial application of the Amendment in this case for the rule of law expressed by the mandate has been affected by a subsequently enacted federal statute." *Banco Nacional*, 383 F.2d at 178.

See *Jordan v. Jordan*, 643 P.2d 1008, 1012-13 (Ariz. 1982).

¶ 26 Following *Banco Nacional*, we find that this court needed to determine whether the amendment to section 5-130 applied to this case.

¶ 27 Next, the State argues that we should adopt the reasoning of *People v. Hunter*, 2016 IL App (1st) 141904, issued after we filed our initial order on remand in this case. The *Hunter* court said that courts should not apply procedural statutes retroactively if the retroactive application would affect a party's vested rights. *Hunter*, 2016 IL App (1st) 141904, ¶ 72; see *People v. One 1998 GMC*, 2011 IL 110236, ¶ 69. Although the State in its initial brief on remand raised no argument concerning vested rights, we choose to address the new argument on its merits because of the conflict between our ruling and the ruling in *Hunter*.

¶ 28 *Hunter* involved a juvenile automatically transferred to criminal court for trial, who argued on direct review of his conviction that the amendment to section 5-130 should apply to the charges against him. The *Hunter* court held that the State had a vested right to have Hunter sentenced as an adult, because "[a]pplying the amended language retroactively to this case would either require the State to file new petitions seeking criminal prosecution and sentencing on remand, or would result in significant legal consequences for its failure to have done so previously." *Hunter*, 2016 IL App (1st) 141904, ¶ 73.

¶ 29 Another panel of the appellate court, in *People v. Ortiz*, 2016 IL App (1st) 133294, addressed the conflict between our opinion and *Hunter*. The *Ortiz* court explained that under the reasoning of *Caveney*, 207 Ill. 2d at 92-95, and *Glisson*, 202 Ill. 2d at 505-07, courts need not conduct a retroactive impact analysis to determine the temporal reach of a statutory amendment, when the legislature has not specified the amendment's effective date. *Ortiz*, 2016 IL App (1st) 133294, ¶¶ 29-33. We agree with the *Ortiz* court, which more fully explained the holdings in *Caveney* and *Glisson*.

¶ 30 Moreover, even if our supreme court were to require retroactive impact analysis for statutory amendments, we find no authority other than *Hunter* for the proposition that the State has a vested right to have the criminal courts, rather than the juvenile courts, sentence juvenile defendants. Generally, parties have " 'no vested right in any particular remedy or method of procedure.' " *People v. Ruiz*, 107 Ill. 2d 19, 23 (1985) (quoting *Ogdon v. Gianakos*, 415 Ill. 591, 597 (1953)); see *Williams v. Irving*, 98 Ill. App. 3d 323, 329 (1981) (no vested interest in method for calculating good time for sentence). We do not see why requiring the State to apply to the court for a transfer for sentencing, if it seeks to have a juvenile sentenced by the criminal courts, imposes too great a burden on the State, in view of the interest of all citizens in the imposition on juveniles of just sentences that take into account the "distinctive attributes of youth" (*Miller*, 567 U.S. at ___, 132 S. Ct. at 2468). Our remand to the juvenile court does not affect any party's vested rights. Under the reasoning of *Caveney*, *Glisson* and *Ortiz*, we deny the State's petition for rehearing.

¶ 31                                              CONCLUSION

¶ 32 The procedural amendment to section 5-130 of the Juvenile Court Act applies to cases on direct appeal, including the prosecution of Patterson. Under the amended Act, the juvenile court should have held a hearing under section 5-805 of the Act before transferring the prosecution of the case against Patterson to the criminal court. We vacate the sentence imposed on Patterson and remand to the juvenile court, where the State may exercise its discretion to decide whether to file a petition to transfer the case to criminal court for sentencing.

- 6 -

¶ 33          Convictions affirmed; sentence vacated; cause remanded.