NO. 4-05-1053     Filed 7/19/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| AMORY L. MILLSAP, | ) | No. 05CF190 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Harold J. Frobish, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

In November 2005, a jury convicted defendant, Amory L. Millsap, of two counts of criminal drug conspiracy (720 ILCS 570/405.1(a) West 2004)), one count of unlawful delivery of a controlled substance (720 ILCS 570/401(d)(i) (West 2004)), and one count of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2004)).  The trial court entered convictions on one count of criminal drug conspiracy and on the unlawful delivery of a controlled substance (counts I and III). The court sentenced defendant to concurrent 10-year prison terms. On appeal, defendant argues (1) defense counsel was ineffective for failing to file a motion to suppress defendant's statements to police; (2) the court abused its discretion by requiring defendant to wear leg shackles during trial; and (3) his criminal-drug-conspiracy conviction must be vacated because it is the inchoate offense of unlawful delivery of a controlled

substance.  We affirm in part, vacate in part, and remand with directions.

## I. BACKGROUND

On August 2, 2005, the State charged defendant with two counts of criminal drug conspiracy, one count of unlawful delivery of a controlled substance, and one count of unlawful possession of a controlled substance.  On November 16, 2005, a jury trial was conducted.  Prior to jury selection, defense counsel asked the court about the removal of defendant's handcuffs.  The court noted defendant was in the custody of the county jail and was informed by the prosecutor that defendant was returned to the county's custody after serving his time in prison for a parole violation.  The court went on to say:

"THE COURT: Let me raise this as a suggestion, and I can get the comments of counsel.  I would be inclined since Mr. Millsap is in custody, to release both of his hands from handcuffs.  ***

***

THE COURT: And then shackle his ankles to the eyebolt in the floor.  The jury *** won't know that his ankle is secured.  He will have freedom of his hands.  The alternative is to place security officer[]

- 2 -

deputies very close to [defendant]. This is
a very old courthouse, very inadequate
physical accommodation. I believe this would
be the best way to go.

Any objection to that Mr. Ahlemeyer?

MR. AHLEMEYER: Well, I personally am not
too worried about him being restrained at
all. I have known Amory since he was 13
years old. I don't think he is much of a
threat to do anything."

The court inquired into defendant's prison record,
learning defendant served half of a 5-year sentence and 11 months
on a 3-year sentence. The court observed defendant was eligible
for a 14-year sentence on the current charges. Upon the court's
inquiry, defendant advised the court he was approximately 5 feet
11 inches tall and weighed 290 to 295 pounds. The court then
expressed its belief defendant would not be prejudiced by
shackling his legs to an eyebolt in the floor because his hands
would be free and the table was skirted. The court asked defense
counsel for his opinion, and counsel objected to the shackling.
The court responded:

"THE COURT: [Defendant] is in custody.
I am not in the position to say because we
are having a trial, his custodial status is

terminated. The alternative is to bring in at least two officers and seat them right behind [defendant], who is, as he says, 5' 11" and 290 pounds. Would you rather have two officers seated behind him?

MR. AHLEMEYER: Well, Your Honor, I have given you my opinion, and I don't think he is a risk to do anything. I would leave it to the [c]ourt to do what the [c]ourt wants to do. You are not going to get me in a situation where I pick one of--one of two alternative, neither of which I want.

THE COURT: It is the position of the defense that [defendant] should then be placed in a noncustodial status during the trial? Is that the position of the defense?

MR. AHLEMEYER: Well, frankly, I think that my understanding of the defendants we have had in this courtroom that are in the custody of Livingston County, which he is, are, I guess, guarded by our security officer. *** I don't know why [defendant] should be treated any different. He has been to prison twice. They have both been for

- 4 -

nonviolent crimes.

THE COURT: Well, they are turned over to our security officers. Juries are not here. And they are shackled. Their legs and hands usually are shackled. That is why they are not a risk.

MR. AHLEMEYER: I meant during trials. During trials you know, I just am telling the [c]ourt my opinion is *** he's not a security problem. My wish is that he is unencumbered altogether. ***

* * *

THE COURT: Well, I am dealing with an Appellate Court in the Third District at least, and sometimes we hear some language of that in the Fourth District, that are very uninformed, inexperienced[,] and possess very poor judgment on what is a proper step to take in courtroom security.

Now, I answer to the Fourth District Appellate Court. They are absolutely dead wrong. They mean well, but they are making some decisions that are unwarranted, that are dangerous, and uncalled for. They basically

take the position that when someone enters the courtroom, even though he is in custody, unless he has spit in somebody's face or hit them along the side of the head recently, put them in a noncustodial status.  That is idiotic.

*  *  *

THE COURT: All right.  The decision of the court is that [defendant's] hands should be released and that he will be secured to the eyebolt in the floor.  The Appellate Court is advised that the jury can't see that.  That it is absurd to take any other action.  Even the [United States] Supreme Court does not require that defendants in custody be placed in a noncustodial status. To do otherwise is going to require that I bring in, certainly, two guards to sit right behind [defendant] so that he remains in custody.  That would prejudice him, I fear. This arrangement that I have chosen does not. To those members of the Appellate Court that disagree with me, I simply say to them that they are wrong."

- 6 -

The State then called John Cox, a corporal with the City of Pontiac police department, who testified on July 22, 2005, he received a tip from a caller who identified herself as Stephanie. Cox testified the woman described the automobile and identified the subjects in the car, the subjects' place of origin and destination, and the subjects' purpose.

Acting on the information, Cox gathered officers to look for the car. Shortly after receiving the tip, Officer Robin Bohm located the vehicle, a dark blue Chevy Impala with license plates reading BDYSHP4, and informed Cox the vehicle was in route to Pontiac. Bohm eventually lost sight of the vehicle. Officer Mike Nolan later located the vehicle leaving Pontiac and followed it. Cox caught up with the vehicle and stopped it a few miles outside town. As Cox approached the car, he observed Tiffany Krueger driving, Jose Speedon sitting in the front passenger seat, and defendant sitting in the backseat, all consistent with the tipster's description.

Cox requested Krueger exit the vehicle and asked her who had the heroin she had just purchased in Pontiac. Cox then removed Jose Speedon from the car and noticed an open syringe on the floorboard. The floorboard and the bottom of Speedon's jeans were soaking wet with water The officers patted down Speedon and placed him in the rear seat of Cox's car. Defendant exited the vehicle and waited with a Livingston County deputy while Cox

searched the car. Cox found two syringes and a silver tablespoon with a burnt edge on the end in the front passenger area and a clear plastic corner from a Baggie with white residue in the center console.

Cox testified defendant stated he took Speedon to Pontiac and introduced him to Carlos Mims so Speedon could purchase heroin. Defendant stated Speedon bought a $30 gram bag of heroin from Mims. Cox did not arrest defendant that night because defendant agreed to assist police that evening in purchasing more narcotics from Mims with an undercover agent.

During Cox's testimony, the prosecutor requested a sidebar during which the following colloquy occurred:

"MR. LUCKMAN [(prosecutor)]: [Defendant] is putting on quite a show.

MR. AHLEMEYER: I already told him that.

MR. LUCKMAN: With witnesses. I know Mr. Ahlemeyer is talking to him and I hope the [c]ourt won't have to, but if it continues, I am going to ask the [c]ourt to do it. He is doing all kinds of things over there.

THE COURT: All right. Thank you."

Following Cox's testimony the trial court recessed. Outside the presence of the jury, the court stated:

"THE COURT: For purposes of the record

and the whole issue of the security in the courtroom, the record should reflect that I believe Mr. Ahlemeyer admonished his client to stop gyrating around in his chair while testimony is being given. Mr. Luckman objected to it.  I simply note this for the record because the conduct of the defendant was not appropriate.  And these are the kinds of things that happen in trials when people are in custody.  Appellate Justices don't understand that because some of them haven't been trial judges.  But we have to take into consideration those kinds of things that happen.  I did so.  And that is further reason to justify the shackling I have done in this case."

Next, Jose Speedon testified on the night of the offense he was at his house when defendant showed up to see if Speedon wanted heroin.  Speedon indicated he might want some, so defendant used Speedon's cellular phone to arrange for Speedon to purchase heroin from defendant's friend Mims.

Once Krueger came to the house, she drove them to Pontiac.  Speedon testified defendant directed them to Meadowview Apartments, where defendant's friend Mims came out of an

- 9 -

apartment and defendant introduced them.  Mims got in the car and directed them to another location.  Mims then got out of the car and went into a house.  Mims returned to the car and got in.  Speedon gave Mims $50 and Mims gave Speedon a half gram of heroin in a small corner Baggie.  Speedon had never talked to Mims before defendant introduced them at Meadowview.

Speedon testified Mims then gave defendant some crack cocaine.  Speedon understood that when defendant provided Mims with someone to buy heroin, defendant was given crack in exchange.  They then dropped Mims off and started driving back to Fairbury.  As the drove, Speedon "cooked" some of the heroin and injected it.

Defendant testified Speedon came to defendant's house and told defendant he was "dope sick."  Speedon told defendant he had talked to Mims on the phone and arranged to buy heroin from Mims at Meadowview Court in Pontiac.  Speedon was not sure how to get to Meadowview and asked defendant to show him where it was.  Defendant agreed, and directed Krueger to Meadowview Court.

When they arrived, Mims got in the backseat of the car and Speedon gave Mims $50.  Krueger drove across town, where Mims went into a house and returned with heroin, which he gave to Speedon.  Defendant denied getting anything from Mims that night.

After they dropped Mims off, they stopped at a gas station, where Krueger bought a bottle of water.  While driving

back to Fairbury, Speedon cooked and injected some heroin. Krueger initially asked Speedon to make some for her but shortly thereafter the police pulled the vehicle over. Speedon threw the remaining packets on the floor, poured water over them, and stomped the drugs into the carpet. Speedon also flushed the needle out with water. Defendant denied telling Cox he had taken Speedon to Pontiac to buy drugs from Mims or that he introduced Speedon to Mims. The jury found defendant guilty on all four counts.

On December 21, 2005, the trial court conducted a sentencing hearing and entered convictions on one count of criminal drug conspiracy and on the unlawful-delivery-of-a-controlled-substance charge. The court noted defendant had a significant criminal history, with more than a 20-year history of drug use and criminal activity. The court also noted defendant's prior sentences included sentences of probation, jail terms, and prison sentences. The court characterized defendant as a career criminal whose conduct demonstrated that drugs are more important to him than his family. The court sentenced defendant to concurrent 10-year prison terms on the 2 counts. The court stated the sentence was "justly earned by you by your conduct." This appeal followed.

II. ANALYSIS

A. Ineffective Assistance of Counsel

- 11 -

Defendant argues his trial counsel was ineffective for failing to file a motion to suppress his statements to police because the police's seizure and questioning of him was not justified by the anonymous tip and the police's limited corroboration of the tip. Defendant contends the substance of the tip failed to adequately establish the informant's veracity or her basis of knowledge, and the police's corroboration of only the occupants' identities and their seating arrangement was insufficient independent verification of the tipster's allegations. Defendant argues the stop was not justified by specific articulable facts that would lead a reasonable person to believe defendant was committing a crime, so the detention was illegal and defendant's later statements to police would have been suppressed. The State argues the record lacks sufficient evidence to allow meaningful consideration of defendant's ineffective-assistance-of-counsel claim. We agree with the State and decline to adjudicate this issue because it is more appropriately addressed in a motion for postconviction relief.

To prevail on a claim of ineffective assistance of counsel, a defendant must prove (1) counsel's assistance was deficient under prevailing professional norms and (2) the deficiency prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).

In this case, it is not clear the record contains all the evidence that could have been presented in regard to the seizure. The circumstances leading up to the stop of the vehicle were only briefly described at the preliminary hearing and trial. Notably, the prosecutor specifically asked Cox at trial to describe the tip "without going into a bunch of detail" and indicated he wanted Cox "to stay away from a great deal of detail." The record is insufficient to determine whether the State could have presented additional evidence supporting a legal stop of the vehicle.

As such, the record is devoid of the facts necessary to make a determination on whether trial counsel was ineffective for failing to challenge the stop and, if so, whether defendant was prejudiced by the deficiency. When, as here, the defendant's ineffective-assistance-of-counsel claims require consideration of matters outside the record on direct appeal, a proceeding for postconviction relief is better suited for addressing defendant's claims because a complete record can be made and the attorney-client privilege no longer applies. See People v. Kunze, 193 Ill. App. 3d 708, 725-26, 550 N.E.2d 284, 296 (1990); People v. Neylon, 327 Ill. App. 3d 300, 312, 762 N.E.2d 1127, 1138 (2002). We therefore decline to adjudicate defendant's ineffective-assistance-of-counsel claims in this direct appeal.

B. Shackling

Defendant argues the trial court abused its discretion by requiring him to wear leg shackles during trial as part of routine court security, without holding a proper hearing on whether defendant posed a security risk. The State argues the court conducted a hearing and correctly concluded it was necessary to shackle one of defendant's ankles to an eyebolt in the floor.

1. Defendant's Claim as Plain Error

Defense counsel objected to the restraints prior to trial but did not include the issue in a posttrial motion. To preserve an error for appellate review, defendant must object at trial and include the issue in a posttrial motion. People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988). By failing to include the issue in a posttrial motion, defendant has forfeited this issue for review.

Defendant asserts we can review the issue as plain error. Under the plain-error doctrine, a reviewing court can review forfeited errors when (1) the evidence is so closely balanced the verdict may have resulted from the error and not the evidence or (2) the error is so serious it denied defendant a substantial right and a fair trial. People v. Herron, 215 Ill. 2d 167, 178-79, 830 N.E.2d 467, 475 (2005).

a. Defendant's Claim on the Merits

Initially, we will consider whether error occurred at all. <u>People v. Urdiales</u>, No. 98996, slip op. at 47 (February 16, 2007), __ Ill. 2d ___, ___, ___, N.E.2d ___, ___.

Defendant argues the record fails to demonstrate an exceptional need to justify the use of restraints. Counsel personally vouched for defendant's passive character and the record provided no indication defendant had ever been disruptive in court, tried to escape, been violent or self-destructive, or put court security at risk. The State argues the court properly made a particularized determination to the defendant based on factors such as the seriousness of the charge, defendant's physical attributes, defendant's past record, the nature and physical security of the courtroom, and the adequacy and availability of alternative remedies.

### b. Restraints Generally

Shackling a defendant is disfavored because

"(1) it tends to prejudice the jury against the accused; (2) it restricts the defendant's ability to assist counsel during trial; and (3) it offends the dignity of the judicial process. Nonetheless, *** a defendant may be shackled if there is an indication he may try to escape, pose a threat to the safety of courtroom occupants,

- 15 -

or disrupt the order of the courtroom."

*Urdiales*, slip op. at 48, __ Ill. 2d at ___,

___, N.E.2d at ___.

The factors the trial court should consider in deciding whether restraint is necessary include (1) the seriousness of the current charge; (2) defendant's temperament and character; (3) defendant's age and physical attributes; (4) defendant's prior record; (5) evidence of a present plan to escape and any past escapes or attempted escapes; (6) threats to cause a disturbance or harm to others; (7) self-destructive tendencies; (8) the risk of mob violence or of revenge by others; (9) the possibility of an attempted rescue by other offenders; (10) the size and mood of the audience; (11) the security of the courtroom; and (12) the adequacy of alternative remedies. *People v. Boose*, 66 Ill. 2d 261, 266-67, 362 N.E.2d 303, 305-06 (1977).

The trial court must, outside the presence of the jury, state for the record its reasons for shackling the defendant and give defense counsel an opportunity to present reasons why the defendant should not be shackled. *Boose*, 66 Ill. 2d at 266, 362 N.E.2d at 305. A defendant should not be restrained in front of the fact finder without a showing of a manifest need for the restraints. *Boose*, 66 Ill. 2d at 265-66, 362 N.E.2d at 305. The trial court is to "select the physical restraints most suitable in light of all the circumstances." *Boose*, 66 Ill. 2d at 266,

- 16 -

362 N.E.2d at 305. The Boose court held, "'the trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record.'" (Emphasis added.) Boose, 66 Ill. 2d at 268, 362 N.E.2d at 306, quoting People v. Duran, 16 Cal. 3d 282, 293, 545 P.2d 1322, 1329, 127 Cal. Rptr. 618, 625 (1976).

### c. Standard of Review

While a single reason has generally been held insufficient to justify shackling, courts have found no abuse of discretion when the trial court expresses more than a single reason for shackling a defendant. Urdiales, slip op. at 48-49, __ Ill. 2d at ___, ___, N.E.2d at ___. On appeal, we review the trial court's determination shackling was necessary for an abuse of discretion. Urdiales, slip op. at 48, __ Ill. 2d at ___, ___, N.E.2d at ___.

### d. Facts Here

Prior to jury selection, defense counsel asked the trial court to remove defendant's handcuffs. At that time, the prosecutor informed the court defendant was in the county's custody after serving his time in prison for a parole violation. The court stated it was inclined to release defendant's hands but to shackle his ankle to the eyebolt in the floor. The court

stated the jury would not know defendant's ankle was shackled. The court observed the courthouse provided "inadequate physical accommodation" and stated the alternative to shackling defendant was to place security officers close to him. The court stated it believed shackling defendant was the best alternative and asked if defense counsel objected.

Defense counsel objected, telling the trial court he had known defendant for many years and did not think defendant posed a threat or needed to be restrained at all. The court then inquired into defendant's prison record, learning defendant served half of a 5-year prison sentence and 11 months on a 3-year prison sentence. The court also noted defendant was eligible for a 14-year sentence on the current charges. Upon the court's inquiry, defendant advised the court he was approximately 5 feet 11 inches tall and weighed 290 to 295 pounds.

The trial court reiterated its belief that defendant would not be prejudiced by shackling his legs to the floor because his hands would be free and the table was skirted. The court again asked defense counsel for his opinion and counsel objected to the shackling and emphasized that defendant's prison sentences were for nonviolent crimes. The court ultimately decided to release defendant's hands but to secure defendant's legs to the eyebolt in the floor. The court found the shackling was not visible to the jury and would not prejudice him while

bringing in two guards to sit behind defendant could prejudice him.

In addition, the trial court later expressed concern over defendant's behavior during the course of the trial. Outside the presence of the jury, the court stated for the record defendant was admonished by his counsel to "stop gyrating around in his chair while testimony is being given." The court stated it found defendant's conduct inappropriate and further justification for the shackling.

### e. Principles Applied

The record shows that prior to the trial court making its final determination, the court conducted a Boose analysis and found numerous factors supported shackling the defendant, including (1) the seriousness of the current charge, (2) defendant's physical attributes, (3) defendant's prison record; (4) the security of the courtroom, and (5) the adequacy of alternative remedies. See Boose, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06. The court also gave defense counsel an opportunity to object and state his reasons why defendant should not be shackled. The restraints were not visible the jury and defendant makes no allegation the restraints impaired his ability to communicate with counsel or assist in his defense. We find the trial court set forth sufficient reasons on the record to

justify the use of physical restraints.

Although we find the trial court made a sufficient particularized finding that the circumstances supported shackling defendant, we are mindful of defendant's contention the court shackled defendant as a matter of routine court procedure because he was "in custody." However, "[w]e ordinarily presume that the trial judge knows and follows the law unless the record indicates otherwise." People v. Gaultney, 174 Ill. 2d 410, 420, 675 N.E.2d 102, 107 (1996). In this case, the court seemingly conducted a proper Boose analysis, setting forth numerous reasons justifying the shackling. We note defendant's failure to raise the shackling issue in a posttrial motion denied the court the opportunity to address the allegation it shackled defendant as part of routine court security. We conclude no error occurred; moreover, neither did any error rise to the level of plain error.

2. An Epilogue on The Trial Judge's Remarks

The trial court also spent considerable time and energy condemning this court for its decisions on the issue of shackling defendants. The Illinois Supreme Court recently admonished the same trial judge for similar conduct, stating:

"We do not, however, mean to encourage the kind of rambling, amorphous diatribe in which the trial court engaged. While restrained and reasoned disagreement with the

rulings of a superior court is not to be discouraged, and may well be constructive in a proper setting, as our appellate court has observed, dignity is necessary for judicial proceedings. [Citation.] *** [A] trial judge should be the exemplar of dignity, he should exercise restraint over his conduct and utterances, and should control his emotions. [Citation.]  We trust that the judge in this case will, in the future, circumscribe his conduct and comments so as to reflect the dignity of his office, in particular, and that of the judicial system, of which he is but one part." Urdiales, slip op. at 52, ___ Ill. 2d at ___, ___ N.E.2d at ___.

In addition, we are compelled to observe that the Illinois Supreme Court has held a general policy of shackling defendants is not appropriate, even for those defendants who are in custody.  In Boose, the supreme court stated as follows:

"'[T]he trial judge must make the decision to use physical restraints on a case-by-case basis.  The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses

- 21 -

unless <u>there</u> <u>is</u> <u>a</u> <u>showing</u> <u>of</u> <u>necessity</u> <u>on</u> <u>the</u> <u>record</u>.'"  (Emphasis added.)  <u>Boose</u>, 66 Ill. 2d at 268, 362 N.E.2d at 306, quoting <u>Duran</u>, 16 Cal. 3d at 293, 545 P.2d at 1329, 127 Cal. Rptr. at 625.

Illinois Supreme Court precedent also indicates this standard applies in situations where the defendant has little or no risk of being prejudiced by a jury's knowledge of the shackles.  In <u>In re Staley</u>, 67 Ill. 2d 33, 35-36, 364 N.E.2d 72, 72-73 (1977), the defendant appealed after being required to appear at an adjudicatory hearing in handcuffs.  The <u>Staley</u> court stated as follows:

> "The possibility of prejudicing a jury *** is not the only reason why courts should not allow the shackling of an accused <u>in</u> <u>the</u> <u>absence</u> <u>of</u> <u>a</u> <u>strong</u> <u>necessity</u> <u>for</u> <u>doing</u> <u>so</u>. The presumption of innocence is central to our administration of criminal justice.  In the absence of exceptional circumstances, an accused has the right to stand trial 'with the appearance, dignity, and self-respect of a free and innocent man.'"  (Emphasis added.) <u>Staley</u>, 67 Ill. 2d at 37, 364 N.E.2d at 73, quoting <u>Eaddy v. People</u>, 115 Colo. 488, 492,

174 P.2d 717, 719 (1946).

The Staley court held requiring a defendant to be restrained while being judged without clear cause jeopardizes the presumption's value and protection and demeans justice. Staley, 67 Ill. 2d at 37, 364 N.E.2d at 73. In People v. Allen, 222 Ill. 2d 340, 346-47, 856 N.E.2d 349, 352-53 (2006), the Illinois Supreme Court applied Boose to a case involving an electronic stun belt that was not necessarily visible to the jury. The court found the trial court's failure to follow the Boose procedures before requiring a defendant to continue wearing the electronic stun belt constituted a due-process violation. Allen, 222 Ill. 2d at 349, 856 N.E.2d at 356. The Allen court specifically stated that the county sheriff's policy requiring all custodial felony defendants to wear stun belts was frowned upon in Boose. Allen, 222 Ill. 2d at 349, 856 N.E.2d at 354.

While the trial court's assertion the United States Supreme Court "does not require that defendants in custody be placed in a noncustodial status" is debatable, we note that Illinois Supreme Court decisions are binding on all Illinois courts, including on questions of federal law in the absence of conflicting United States Supreme Court precedent answering the precise legal issue. Bowman v. American River Transportation Co., 217 Ill. 2d 75, 91-92, 838 N.E.2d 949, 958 (2005); Mekertichian v. Mercedes-Benz U.S.A., L.L.C., 347 Ill. App. 3d

828, 836, 807 N.E.2d 1165, 1171 (2004). Also, Illinois courts have the authority to interpret provisions of the Illinois constitution, such as the due-process clause (Ill. Const. 1970, art. I, §2), more broadly than United States Supreme Court interpretations of similar provision of the federal constitution. See People v. McCauley, 163 Ill. 2d 414, 426, 645 N.E.2d 923, 930 (1994).

The trial in this case occurred before the Urdiales decision. We presume the admonition in that case will prompt the trial judge to temper his comments. We choose, however, to make our own. The trial judge's criticism of the Appellate Court of the Third and Fourth Districts consisted of deriding the cumulative experience, judgment, and insight of the members of those courts using words such as "idiotic" and "absurd." Disagreement can be healthy, but such language is unseemly and disrespectful. The members of those courts will easily cope with the trial judge's comments without a loss of self-esteem. But what of the public, and court personnel, and defendants and lawyers who appear in court? They may come to believe the system is flawed because the judge before whom they appear berates and ignores the decisions of higher courts, or they may believe those higher courts do not deserve respect.

Previous decisions that have questioned shackling procedures have focused on whether a hearing has been conducted,

what factors were considered and whether the record demonstrates a need for restraints. The trial judge is apparently unable to grasp that restraints are disfavored. Thus, if restraints are used, it must be shown they were justified on a case-by-case basis.

In this case the trial judge's comments grudgingly delineate appropriate reasons for shackling while showing pique at being required to follow the guidelines established in Boose, 66 Ill. 2d at 266-67, 362 N.E.2d at 305-06. No member of the judiciary takes security lightly, but both dignity and safety can be preserved by following the law.

The trial judge need not concern himself with our tender sensibilities. We can withstand his displeasure. However, he does both a disservice and damage to the administration of justice by condemning the system "of which he is but one part." Urdiales, slip op at 52, ___ Ill. 2d at ___, ___ N.E.2d at ___.

### C. Inchoate Offense

Defendant also contends the trial court improperly entered convictions on and sentenced him for both an inchoate and substantive offense. Defendant argues his criminal-drug-conspiracy conviction should be vacated and the cause should be remanded for resentencing on the unlawful-delivery conviction. The State concedes the criminal-drug-conspiracy conviction should

- 25 -

be vacated but argues the cause need not be remanded for resentencing. We agree with the State.

Although defendant forfeited the issue, the State concedes we may review the issue as plain error under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). Because a defendant shall not be convicted of both the inchoate offense and the substantive offense, we vacate defendant's conviction for criminal drug conspiracy. See 720 ILCS 5/8-5 (West 2004) ("[n]o person shall be convicted of both the inchoate and the principal offense"); People v. Sonntag, 238 Ill. App. 3d 854, 856-57, 605 N.E.2d 1064, 1065-66 (1992).

> "Where a defendant is convicted of multiple offenses, reversal of one conviction does not per se require that the defendant be resentenced on the remaining conviction or convictions, as long as the record shows that the trial court considered the offenses separately and sentenced the defendant separately on each offense." People v. Hagan, 199 Ill. App. 3d 267, 290-91, 556 N.E.2d 1224, 1240 (1990).

In sentencing the defendant, the trial court noted defendant had a significant criminal history going back more than 20 years and had numerous prior sentences of probation, jail, and

prison.  The court characterized defendant as a career criminal whose conduct had "justly earned" the concurrent 10-year sentences. Although the court did not delineate between the conspiracy and the delivery charges, the record shows the court sentenced defendant separately on each offense.  In this case, defendant's 10-year sentence for unlawful delivery was justified by the circumstances of the offense and defendant's extensive criminal history.  We therefore vacate defendant's conviction and sentence for criminal drug conspiracy and remand for issuance of an amended sentencing judgment.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment in part, vacate in part, and remand with directions.

Affirmed in part and vacated in part; cause remanded with directions.

APPLETON and McCULLOUGH, JJ., concur.