2016 IL App (1st) 141456

FOURTH DIVISION
December 15, 2016

No. 1-14-1456

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 8824 |
| | ) | |
| ANTHONY SCOTT, | ) | Honorable |
| | ) | Nicholas Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE ELLIS delivered the judgment of the court, with opinion.
Justices Howse and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     Defendant Anthony Scott, along with his codefendant Keith Lucious, were charged with armed robbery, aggravated robbery, and aggravated unlawful restraint for accosting a woman in an alley and taking two backpacks from her. Defendant was 16 years old at the time of the offense, and codefendant was 15 years old. Defendant and codefendant were tried at a joint bench trial and convicted of aggravated robbery and unlawful restraint.

¶ 2     In this appeal, defendant alleges that his trial attorney was ineffective for failing to file a motion to quash his arrest and suppress evidence obtained from him, where the description relayed to the police officers was too vague to support the officer's detention of defendant and codefendant in the area. For the reasons stated below, we decline to reach this question because the record is insufficient to fully assess whether the police had a reasonable, articulable suspicion sufficient to support the officers' investigatory stop. We thus affirm defendant's conviction for aggravated robbery.

¶ 3     We agree with defendant's claim that his unlawful-restraint conviction must be vacated pursuant to the one-act, one-crime doctrine. We also agree that an amendment to the automatic

transfer provision of the Juvenile Court Act of 1987, which excluded the offense of armed robbery from the list of offenses requiring automatic transfer of a juvenile to adult court, applied retroactively to his case. Accordingly, we vacate defendant's sentence for aggravated robbery and remand for resentencing to the juvenile court, with directions that the State be permitted the opportunity to seek a discretionary transfer to adult court.

¶ 4                                                    I. BACKGROUND

¶ 5       The State charged defendant with armed robbery predicated on his and codefendant's being armed with a firearm during the robbery, aggravated robbery, and aggravated unlawful restraint. The aggravated robbery charge alleged that, on April 5, 2013, defendant and codefendant committed a robbery "while indicating verbally, or by their actions *** that they were presently armed with a firearm or other dangerous weapon."

¶ 6       At the time of defendant's trial, armed robbery committed with a firearm by an offender who was at least 15 years old was an offense requiring defendant's case to be transferred to adult court without a hearing. 705 ILCS 405/5-130(1)(a) (West 2012). Both defendant and codefendant elected to have bench trials.

¶ 7       Naritza Castellanos testified that, at 10:30 a.m. on April 5, 2013, she was distributing fliers in an alley near 4251 West Haddon Avenue in Chicago. Castellanos was carrying two backpacks with her. The backpacks contained fliers, keys, a cell phone, and $20 in cash.

¶ 8       She testified that two young men, whom she identified as defendant and codefendant, approached her and asked her for money. She said she did not have any, and codefendant hit her in her face and stomach. Defendant and codefendant threw Castellanos to the ground, took her backpacks, and fled. Castellanos also testified that codefendant pressed a gun to her right temple while she was on the ground.

¶ 9    Castellanos testified that defendant had red hair and that codefendant wore "like braids or bows" in his hair. Castellanos said that codefendant wore a black and brown checkered jacket, and defendant wore a black jacket.

¶ 10    Shortly after defendant and codefendant fled, a passerby loaned his cell phone to Castellanos so that she could call the police. She testified that, a few minutes after she called the police, she saw defendant again in the same area, but he had changed into a white jacket with red lettering on the back. Some time later, the police brought defendant and codefendant to Castellanos in a squad car, and Castellanos identified them as the boys who had robbed her.

¶ 11    Officer Michna testified that he and his partner responded to a call of a robbery near Thomas Street and Kildare Avenue. The prosecutor asked Michna if he was given "a description of any sort regarding the robbery," and Michna replied, "Just it was armed robbery and two male black teens." The court interjected, "I think she means the description of the individuals involved," and Michna said, "Two male black teens."

¶ 12    Michna saw two black teenagers about two blocks from the scene of the incident, whom he identified as defendant and codefendant, and approached them in his car. Michna said that one of them "had braids and the other one had orangish-red hair." Michna asked where they were coming from, and defendant and codefendant "gave conflicting stories." Michna testified that he and his partner put defendant and codefendant into their squad car and drove them back to Castellanos's location to conduct a showup. Castellanos identified defendant and codefendant as the robbers.

¶ 13    After Castellanos identified defendant and codefendant, they were placed under arrest and searched. The police recovered a set of keys from defendant, which Castellanos identified as

her keys. Defendant and codefendant did not have a cell phone or any money on them. Michna testified that no firearm was recovered in connection with the robbery.

¶ 14    On cross-examination, defendant's counsel asked Michna if he stopped defendant and codefendant simply because of their proximity to the site of the robbery, and Micha replied, "No, based on the red hair. They were male teens, black teens." He also testified that he saw them less than two blocks from the reported site of the robbery.

¶ 15    Detective Suzanne Chevalier testified that she, an assistant State's Attorney (ASA), and a youth officer questioned defendant about the robbery. Defendant said that he and codefendant skipped school that day to go shoe shopping. They saw Castellanos in an alley and decided to take her backpacks.

¶ 16    Chevalier testified that defendant admitted that he and codefendant approached Castellanos, threw her to the ground, and took her backpacks. Defendant added that "he told the victim, don't make [codefendant] shoot you." Defendant also said that he did not know why he said, "don't make him shoot you," because codefendant "only had a cell phone with him." Defendant said that he found keys in one of the backpacks, and that, after the robbery, he and codefendant walked around the neighborhood looking for Castellanos's car "so that they could take it."

¶ 17    After Detective Chevalier testified, the State rested. Defendant moved for a directed finding on the armed robbery count, which the court granted.

¶ 18    Neither defendant nor codefendant elected to testify or present any evidence.

¶ 19    The trial court found defendant guilty of aggravated robbery and unlawful restraint. Defense counsel filed a motion for a new trial, which the trial court denied.

¶ 20    Because defendant had been acquitted of the offense that led to his being tried in adult court (*i.e.*, armed robbery with a firearm), the State moved to have defendant sentenced as an adult, noting that he was 16 years old and was on juvenile probation. See 705 ILCS 405/5-130(1)(c)(ii) (West 2012) (permitting State to move for adult sentencing when juvenile charged with automatic-transfer offense is acquitted of automatic-transfer offense and convicted of another, non-automatic-transfer offense). Defense counsel argued that defendant was a "follower," that it was not his idea to rob Castellanos, and that defendant had been in special education classes in school. The court granted the State's motion, citing defendant's criminal history and the fact that this offense involved violence.

¶ 21    The court sentenced defendant to five years' incarceration for aggravated robbery. Defendant's mittimus also reflects a three-year sentence for "aggravated unlawful restraint." Defendant appeals.

¶ 22                                    II. ANALYSIS

¶ 23                    A. Ineffective Assistance of Counsel/Motion to Suppress

¶ 24    Defendant first contends that his attorney was ineffective for failing to file a motion to quash his arrest and suppress Castellanos's identification of him at the scene of the robbery, the keys found on defendant's person, and defendant's subsequent statement to the police and ASA. Defendant claims that the record shows that the police stopped him without any reasonable suspicion that he had committed a crime, leading to the illegal recovery of that evidence. The State argues that the police had reasonable suspicion based on the description of the robbers given by Castellanos and the inconsistent answers given by defendant and codefendant.

¶ 25    Having reviewed the record, we decline to reach the merits of defendant's ineffectiveness argument because the record is insufficient to fully assess the merits of a possible motion to

suppress. Our supreme court has stated that "where *** the defendant's claim of ineffectiveness is based on counsel's failure to file a suppression motion, the record will frequently be incomplete or inadequate to evaluate that claim because the record was not created for that purpose." *People v. Henderson*, 2013 IL 114040, ¶ 22; see also *People v. Bew*, 228 Ill. 2d 122, 133-35 (2008) (declining to reach issue of counsel's ineffectiveness for failing to file motion to suppress); *People v. Evans*, 2015 IL App (1st) 130991, ¶ 34 ("After reviewing the record here, we decline to consider defendant's claim of ineffective assistance of trial counsel because the record is devoid of evidence that would allow this court to adjudicate whether trial counsel's decision to not file a motion to suppress was strategic, whether the motion would have been granted, or whether [the police] acted lawfully under the circumstances.").

¶ 26 At trial, Officer Michna did not recount the specifics of the call he received that led him to search for the robbery suspects. He testified that codefendant's red hair stood out to him, but he did not say whether the dispatch included a description of the suspect as having red hair. Nor did Michna testify to the content of defendant and codefendant's inconsistent responses to his questions, which was his reason for putting the boys in the squad car. All of these facts would be relevant to determining whether Michna was justified in apprehending defendant, but the record does not reveal them. Moreover, there was very little testimony about the circumstances between defendant's arrest and his confession, which would be relevant to determining whether his statement was sufficiently attenuated from any illegal detention to justify its admission.

¶ 27 Our conclusion is supported by the decision in *People v. Millsap*, 374 Ill. App. 3d 857, 863 (2007), where this court declined to reach the issue of counsel's ineffectiveness for failing to file a motion to suppress where "[t]he circumstances leading up to the stop of the [defendant's] vehicle were only briefly described at the preliminary hearing and trial." The operative issue in

*Millsap*, as in this case, would have been whether the police lacked a reasonable, articulable suspicion to stop the defendant. *Id.* at 862-63. And, like this case, the record did not show the full description of the suspect given to the police, making a full analysis of that question impossible. *Id.* at 860.

¶ 28    Our conclusion is further supported by the nature of the inquiry posed by defendant's claim. An analysis of the existence of a reasonable, articulable suspicion is a fact-intensive inquiry requiring us to consider the totality of the circumstances surrounding the interaction between the police and the defendant. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *People v. Timmsen*, 2016 IL 118181, ¶ 14. The same is true for the question of attenuation. See *Brown v. Illinois*, 422 U.S. 590, 603 (1975) (attenuation must be decided "on the facts of each case," and "[n]o single fact is dispositive"). Only with a sufficient factual picture could we determine whether Michna had enough information to justify his detention of defendant or whether the recovery of the keys and defendant's confession were sufficiently attenuated from any illegality. Here, there are simply too many unanswered questions to make either of those determinations.

¶ 29    Because the record does not fully disclose the possible reasons for the police's actions in this case, we cannot address defendant's claim that his attorney was ineffective for filing a motion to suppress.

¶ 30                    B. Mittimus Correction & One-Act, One-Crime

¶ 31    Next, defendant contends that his conviction for unlawful restraint should be vacated under the one-act, one-crime doctrine and that his mittimus should be corrected to reflect a conviction for unlawful restraint rather than aggravated unlawful restraint and to reflect the correct term of mandatory supervised release (MSR) for his unlawful restraint conviction.

¶ 32    We first discuss defendant's one-act, one-crime argument because, if defendant's unlawful restraint conviction violates the one-act, one-crime doctrine, that conviction must be vacated, rendering a correction of the mittimus moot. See *In re Samantha V.*, 234 Ill. 2d 359, 379 (2009) (when one-act, one-crime doctrine violated, less serious conviction should be vacated).

¶ 33    We recently resolved this issue in codefendant's appeal in *People v. Lucious*, 2016 IL App (1st) 141127, ¶ 58. There, as in this case, the parties agreed that codefendant's unlawful restraint conviction had to be vacated under the one-act, one-crime doctrine because it involved the same conduct constituting the aggravated robbery. *Id.* For the same reasons we stated in *Lucious*, we agree with the parties that defendant's unlawful restraint conviction must be vacated pursuant to the one-act, one-crime doctrine.

¶ 34    Having vacated his conviction for unlawful restraint, we need not decide whether the mittimus needs to be corrected. We direct the clerk of the circuit court to issue a new mittimus omitting any reference to the now-vacated unlawful restraint count, including any reference to his MSR term for unlawful restraint.

¶ 35                              C. Transfer to Adult Court

¶ 36    In his opening brief, defendant alleged that section 5-130 of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5-130 (West 2012)), which required him to be tried as an adult because the State charged him with armed robbery with a firearm, violated the constitutional principles of procedural and substantive due process. In a supplemental brief, defendant contends that the amendments to section 5-130 contained in Public Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a)), which removed armed robbery with a firearm from the list of offenses requiring automatic-transfer to adult court, apply to his case.

¶ 37    We first address defendant's supplemental brief argument. That is because, if defendant is correct that the amendments to section 5-130 apply to him, he was not eligible for automatic transfer, and we would not need to address the constitutionality of section 5-130 prior to the amendments. See *People v. White*, 2011 IL 109689, ¶ 148 ("[I]t is a fundamental rule of judicial restraint that a court not reach constitutional questions in advance of the necessity of deciding them." (Emphasis omitted.)). Thus, we turn to the question of whether the amendments to section 5-130 apply to defendant.

¶ 38                                    1. Public Act 99-258

¶ 39    In Public Act 99-258, § 5 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130(1)(a)), the General Assembly removed armed robbery committed with a firearm from the list of offenses for which a juvenile must be automatically tried in adult court. At the time of defendant's prosecution, section 5-130 required that all juveniles 15 years old and up be tried as adults when they were charged with armed robbery committed with a firearm. 705 ILCS 405/5-130(1)(a) (West 2012).

¶ 40    In his supplemental brief, defendant contends that Public Act 99-258 applies retroactively to cases, like his, that were pending on direct appeal when it passed. Defendant notes that the amendment to section 5-130 in Public Act 99-258 did not include language limiting it to prospective application and that procedural amendments like Public Act 99-258 generally apply retroactively to cases pending on appeal.

¶ 41    The Illinois Supreme Court recently resolved the retroactivity of Public Act 99-258's amendment to section 5-130 in *People ex rel. Alvarez v. Howard*, 2016 IL 120729. In *Howard*, the defendant was charged with a murder he allegedly committed when he was 15 years old. *Id.* ¶¶ 3-4. At the time the defendant was charged, section 5-130 required all juveniles 15 and older

to be automatically transferred to adult court when they were charged with first-degree murder. *Id.* ¶ 4. While the charges against the defendant were pending, the legislature passed Public Act 99-258, which amended section 5-130 to raise the age of automatic transfer from 15 to 16. *Id.* ¶ 5. The defendant filed a motion to hold a hearing on whether he should be transferred, and the trial court granted that motion. *Id.* ¶¶ 5, 7. The State then sought leave to file an action for a writ of *mandamus* in the Illinois Supreme Court, asking for a writ compelling the trial court to keep the case in adult court. *Id.* ¶ 10.

¶ 42     The Illinois Supreme Court denied the State's request for the writ because the court determined that the amendments to section 5-130 found in Public Act 99-258 applied retroactively. *Id.* ¶¶ 28, 35. The court noted that it had adopted the United States Supreme Court's test from *Landgraf v. USI Film Products*, 511 U.S. 244 (1994), when addressing the retroactivity of legislation. *Howard*, 2016 IL 120729, ¶ 19. When applying the *Landgraf* test, a court should first look to whether the legislature clearly indicated the temporal reach of the amended statute. *Id.* If it did, then the legislature's expression of its intent controls, absent some constitutional problem. *Id.* If the legislature did not signal its intent, then the court looks to whether application of the statute "would have a retroactive impact." *Id.*

¶ 43     But, the supreme court noted, "an Illinois court will never need to go beyond step one of the *Landgraf* test because the legislature has clearly set forth the temporal reach of every amended statute." *Id.* ¶ 20. That is because section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2014)) constitutes a "general savings clause" that has been interpreted "as meaning that procedural changes to statutes will be applied retroactively, while substantive changes are prospective only." *Howard*, 2016 IL 120729, ¶ 20. In other words, if the statutory amendment itself does not indicate its temporal reach, "it is provided by default in section 4." *Id.*

¶ 44    The supreme court then applied that version of the test to the amendments to section 5-130. *Id.* ¶¶ 21, 28. The court found "nothing in the text of the amendment itself that indicates the statute's temporal reach," noting that the amendment to section 5-130 did not contain a savings clause even though other portions of Public Act 99-258 did. *Id.* ¶ 21. The court then found that the amendments to section 5-130 were procedural, relying on precedent establishing that the decision to try a defendant in juvenile or adult court is a procedural one. *Id.* ¶ 28 (citing *People v. Patterson*, 2014 IL 115102, ¶ 104). Because the amendments were procedural, the default legislative intent in section 4 of the Statute on Statutes applied and the amendments were retroactive. *Howard*, 2016 IL 120729, ¶ 28.

¶ 45    *Howard* resolves the question of retroactivity presented in this case. We recognize that the specific provision at issue in *Howard* was the age-threshold increase in Public Act 99-258, whereas this case involves Public Act 99-258's removal of armed robbery committed with a firearm from the list of automatic-transfer offenses. But, in making these changes, Public Act 99-258 amended the same statutory provision: section 5-130. The supreme court thus addressed the same question we are faced with here; namely, whether the amendments to section 5-130 contained in Public Act 99-258 are retroactive. Thus, *Howard* is directly on point.

¶ 46    We also acknowledge that the procedural posture of this case differs slightly from the procedural posture before the court in *Howard*. Specifically, the case in *Howard* was pending before the trial court when Public Act 99-258 was passed, whereas this case was pending on appeal when the amendment was enacted. But under either circumstance, we would apply the same test. See, *e.g.*, *People v. Glisson*, 202 Ill. 2d 499, 503-04 (2002) (applying section 4 of Statute on Statutes to question of retroactivity of statutory amendment passed while case pending on direct appeal); *People v. Digirolamo*, 179 Ill. 2d 24, 49-50 (1997) (deciding retroactivity of

statutory amendment passed while case pending on direct appeal). Thus, the fact that defendant's case was pending on direct appeal when Public Act 99-258 was passed does not change the controlling effect of *Howard*.

¶ 47    The State contends that Public Act 99-258 should be applied prospectively because it had a delayed effective date, noting that it was passed on May 19, 2015 but did not come into effect until January 1, 2016. The State refers to the default rule, found in the Effective Date of Laws Act (5 ILCS 75/0.01 *et seq.* (West 2014)), that any laws passed before June 1 in any year become effective on January 1 of the following year. 5 ILCS 75/1(a) (West 2014). The State claims that, because the legislature passed Public Act 99-258 knowing that, under the Effective Date of Laws Act, it would not go into effect until the following year, it signaled its intent to delay the effective date of the law. See *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 187 (2011) ("[T]he delayed implementation date of [an] amendment indicates a clear legislative intent for the prospective application of the provision.").

¶ 48    But the supreme court rejected an identical argument in *Howard*, 2016 IL 120729, ¶¶ 22-27. We are bound to follow the supreme court's decision that the Effective Date of Laws Act does not signal the legislature's intent to give amendments a prospective effect.

¶ 49    The State also contends that the legislature signaled its intent to have Public Act 99-258 apply prospectively because section 15 of that bill provides that a trial court should consider certain sentencing factors "[o]n or after the effective date of this amendatory Act of the 99th General Assembly." Pub. Act 99-258, § 15 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105).

¶ 50    We recognize that the language identified by the State suggests that the legislature intended for a prospective application. See, *e.g.*, *People v. J.S.*, 103 Ill. 2d 395, 410 (1984) (same language suggested legislative intent for prospective application). But the State fails to recognize

that that language is found in a *different section* of Public Act 99-258. The section at issue in this case excludes armed robbery with a firearm from the list of offenses for which a juvenile may be automatically transferred to adult court. The State seeks to import a statement from a different section, which adds new factors a trial court must consider in *sentencing* a juvenile, to that section. We see no reason to import the language from one of two different sections of Public Act 99-258, enacting two entirely different provisions, to the other.

¶ 51    If anything, the legislature's inclusion of the language, "On or after the effective date of this amendatory Act of the 99th General Assembly," in section 15 of Public Act 99-258 and simultaneous exclusion of that language from section 5 of the same bill signals the legislature's intent to have the two sections have different applications. See *Adames v. Sheahan*, 233 Ill. 2d 276, 311 (2009) ("When [the legislature] includes particular language in one section of a statute but omits it in another section ***, courts presume that [the legislature] has acted intentionally and purposely in the inclusion or exclusion."). In fact, in discussing the absence of language signaling the temporal reach of the amendments to section 5-130, the supreme court noted that "[t]he legislature did include a savings clause for other portions of Public Act 99-258, but it did not do so with respect to the amendments to section 5-130." *Howard*, 2016 IL 120729, ¶ 21. The fact that the legislature signaled its intent to have a different section of Public Act 99-258, adding a new section to an entirely separate statute, apply prospectively does not alter our conclusion that the amendments to section 5-130 apply retroactively.

¶ 52    Having held that the amendment to section 5-130 applies retroactively, we must now discuss the impact of the amendment on defendant's case. In other cases where courts have found this same amendment to be retroactive, they have vacated the defendants' sentences and remanded to provide the State an opportunity to petition to transfer the defendant to adult court.

No. 1-14-1456

See, *e.g.*, *People v. Ortiz*, 2016 IL App (1st) 133294, ¶ 36 (remanding case to juvenile court and giving State "an opportunity to file a petition for a transfer hearing if it so chooses"); *People v. Patterson*, 2016 IL App (1st) 101573-B, ¶ 21 (vacating defendant's sentence and remanding case to juvenile court "to permit the State to file a motion for transfer of the case to criminal court for sentencing").

¶ 53     This case differs from the ordinary circumstance, however. Generally, when a juvenile is not charged with an offense requiring his automatic transfer to adult criminal court, the State may seek a discretionary transfer to adult criminal court. See 705 ILCS 405/5-805(3)(a) (West 2014). When ruling on a transfer motion, the juvenile court must consider, "among other matters," the following factors:

> "(i) the age of the minor;
>
> (ii) the history of the minor, including:
>
>> (A) any previous delinquent or criminal history of the minor,
>>
>> (B) any previous abuse or neglect history of the minor, and
>>
>> (C) any mental health, physical, or educational history of the minor or
>
> combination of these factors;
>
> (iii) the circumstances of the offense, including:
>
>> (A) the seriousness of the offense,
>>
>> (B) whether the minor is charged through accountability,
>>
>> (C) whether there is evidence the offense was committed in an aggressive
>
> and premeditated manner,
>
>> (D) whether there is evidence the offense caused serious bodily harm,
>>
>> (E) whether there is evidence the minor possessed a deadly weapon;

- 14 -

(iv) the advantages of treatment within the juvenile justice system including whether there are facilities or programs, or both, particularly available in the juvenile system;

(v) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections:

(A) the minor's history of services, including the minor's willingness to participate meaningfully in available services;

(B) whether there is a reasonable likelihood that the minor can be rehabilitated before the expiration of the juvenile court's jurisdiction;

(C) the adequacy of the punishment or services." 705 ILCS 405/5-805(3)(b) (West 2014).

The court must give "greater weight to the seriousness of the alleged offense and the minor's prior record of delinquency than to the other factors." *Id.* The rules of evidence apply at a discretionary transfer hearing. 705 ILCS 405/5-805(4) (West 2014).

¶ 54    By contrast, in this case, defendant was charged with armed robbery with a firearm, which, at the time he was charged, was an offense requiring that he be transferred to adult criminal court. Ultimately, the court acquitted defendant of armed robbery with a firearm and found him guilty of aggravated robbery, which was not an automatic-transfer offense.

¶ 55    In a case like this one—where the juvenile was initially charged with an automatic-transfer offense, ultimately acquitted of the automatic-transfer offense, but also convicted of a non-automatic-transfer offense—the State must file a motion to keep the juvenile in adult court for sentencing. 705 ILCS 405/5-130(1)(c)(ii) (West 2014). In ruling on such a motion, the adult criminal court must consider, "among other matters," the six following factors:

"(a) whether there is evidence that the offense was committed in an aggressive and premeditated manner; (b) the age of the minor; (c) the previous history of the minor; (d) whether there are facilities particularly available to the Juvenile Court or the Department of Juvenile Justice for the treatment and rehabilitation of the minor; (e) whether the security of the public requires sentencing under Chapter V of the Unified Code of Corrections; and (f) whether the minor possessed a deadly weapon when committing the offense." *Id.*

The rules of evidence apply when hearing a motion to keep a juvenile in adult criminal court. *Id.*

¶ 56    Here, the trial court considered those six factors and decided that defendant should be sentenced as an adult. Thus, this case differs from the other cases dealing with the retroactivity of the amendments to section 5-130, in that the trial court already conducted a hearing on the appropriateness of adult sentencing for defendant. See, *e.g.*, *Patterson*, 2016 IL App (1st) 101573-B, ¶ 21 (noting that defendant received "no [transfer] hearing").

¶ 57    Defendant contends that, in any event, a new transfer hearing is necessary because the factors listed in the discretionary-transfer provision "are more developed, specific, and different than those a court considers under section 5-130(1)(c)(ii)." The State offers no argument on this point; it argues solely that the amendment has prospective effect.

¶ 58    We agree with defendant that the statutory factors attached to a decision to transfer a juvenile to adult court in the first place are more detailed and extensive than those applicable to a hearing on a motion to keep a juvenile in adult criminal court for sentencing. While the factors generally cover the same topics—the juvenile's age and history, the nature of the offense, and the availability and suitability of services in the juvenile system—section 5-805(3)(b) of the Act (705 ILCS 405/5-805(3)(b) (West 2014)) breaks down those considerations into much more

specific subcategories. Given the greater specificity of the factors applicable to a decision to transfer a juvenile to adult court—as opposed to a decision to keep an already-transferred juvenile in adult court—we cannot say that the trial court's decision on the State's motion in this case would necessarily be the same as the juvenile court's decision on remand.

¶ 59    And as we noted above, the State offers no explanation for why the trial court's decision to keep defendant in the adult criminal court should be considered equivalent to a hypothetical decision to transfer defendant from juvenile court to adult court. In fact, the State has not even asserted that, on remand, it will seek to transfer defendant to adult criminal court. Without any argument from the State, we are hesitant to find that the result of a hypothetical transfer hearing would be the same as the hearing that took place below.

¶ 60    We vacate defendant's sentence for aggravated robbery and remand for resentencing. On remand, the State should have an opportunity to seek to transfer defendant to adult criminal court, should it choose to do so.

¶ 61                    2. Constitutionality of Automatic Transfer

¶ 62    Finally, defendant contends that section 5-130, which required him to be automatically transferred to adult court at the time of his trial, violates the procedural and substantive due process clauses of the United States and Illinois Constitutions. But having determined that Public Act 99-258 applies retroactively to exempt defendant from the automatic-transfer provision, we decline to address the constitutionality of that provision. See *White*, 2011 IL 109689, ¶ 148 ("[I]t is a fundamental rule of judicial restraint that a court not reach constitutional questions in advance of the necessity of deciding them." (Emphasis omitted.)).[1]

---

[1] We also note that the Illinois Supreme Court recently rejected identical due-process challenges in *Patterson*, 2014 IL 115102, ¶¶ 93-98.

¶ 63                                    III. CONCLUSION

¶ 64    For the reasons stated, we affirm defendant's conviction for aggravated robbery. We vacate his sentence for aggravated robbery and remand for resentencing. We direct the juvenile court, on resentencing, to give the State the opportunity to seek a discretionary transfer to adult criminal court, should the State choose to seek such a transfer. We vacate his conviction for unlawful restraint pursuant to the one-act, one-crime doctrine.

¶ 65    Affirmed in part, vacated in part, and remanded with directions.